## Pier *versus* Carr.

1. Carr rented to Sewell; during the term Sewell's goods were levied on for tax; before the sale he left the premises. The constable delivered the key to Carr, who had a bill, " To Let " put on the house, retained the key, had repairs done to the house, and showed it to a person applying to rent it. *Held*, that these did not discharge Sewell from the rent before the end of the term.

2. Had the tenant returned during the term he would have had the right to enter.

3. When a tenant is evicted he is discharged from the rent for the time following, not for that *due* before eviction. *Per* Stowe, J., *of Common Pleas.*

4. If the acts of the landlord are such an interruption of the tenant's rights under the lease as interfere with his possession, or amount to taking the property off the tenant's hands, the rent will be suspended from that time. *Id.*

October 5th 1871. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Allegheny county*: Of October and November Term 1870, No. 96.

This was an action of covenant by William Carr against R. W. Pier, commenced July 3d 1869, on a covenant of suretyship for the performance of the covenants in a lease from Carr to James Sewell, dated January 10th 1868.

By the lease Carr rented a tavern-house in Penn Street, Pittsburg, to Sewell for one year from the 1st of April 1868, at $2000 per annum payable monthly. Pier by an agreement under seal attached to the lease and of the same date stipulated " to be responsible" to Carr, " for the true and faithful performance of the above contract on the part of James Sewell."

In January 1869, a constable levied on Sewell's goods for taxes; the building was then occupied by Sewell's family; before the sale, which took place February 1st, Sewell and his family left the premises; the constable left the key with the plaintiff. The defendant bought some goods at the constable's sale. On the day

[Pier v. Carr.]

after the sale there was a bill "To Let" put upon the house. The defendant sent in February or March for the goods which he had bought; the messenger went to the plaintiff for the key, one of the persons in plaintiff's employ went to the premises, with the messenger who got the goods, the employee of plaintiff locked the door and took the key with him. In March 1869, a new tenant leased from plaintiff who then had the key, opened the house and showed it to the new tenant. After Sewell had left and previously to the expiration of his term, the plaintiff made some repairs to the bar-room.

The claim was for rent from December 1st 1868 until April 1st 1869, less $50; after suit brought $292 were paid by the defendant.

The defendant's 2d point was:—

"If Carr, the plaintiff, took possession of the premises by receiving and retaining the key, putting a workman or workmen into the house for the purpose of making repairs during the term created by the lease, without the assent of the tenant or his surety, it would be such an entry upon the demised premises as would stop the running of the rent."

This was refused.

The court (Stowe, J.) charged:—

"[The simple question here, is, whether the plaintiff took the possession of this house at or about the 1st of February, or subsequently, so as to interfere with the possession of the lessee if he chose to occupy it; in other words, took actual and adverse possession of the property so as to interfere with the lessee or his right under the lease, or to indicate that the landlord took it off the hands of the tenant.] The mere receiving of the key and taking care of it when left by the officer, or putting up a notice that the house was for rent, will not of themselves be such acts as will release the tenant or his security. Nor will a mere entry for the purpose of repairing the floor after the tenant has left, and during the term, in the bar-room five or six feet square, if that was the purpose and effect of the entry, do so. [But if, under all the evidence, you believe that the acts of plaintiff were such as we have indicated, viz., an actual adverse possession and substantial eviction of the tenant, or an interruption of his rights under the lease such as interfered with his possession, or as satisfies you that plaintiff took the property off his hands, the rent will be suspended from such time, to wit, from the time of such entry, and not for the time which precedes it; in other words, if the entry was on the 20th of March you should allow rent to that date—for the tenant is bound to pay to that time."]

The verdict was for the plaintiff for $358.10.

The defendant took a writ of error, and assigned for error the answer to his point and the parts of the charge in brackets.

[*Pier v. Carr.*]

*B. F. Lucas* (with whom was *A. G. Lucas*), for plaintiff in error, cited Vaughan *v.* Blanchard, 1 Yeates 176; Kessler *v.* McConachy, 1 Rawle 435; Magaw *v.* Lambert, 3 Barr 444.

*T. B. Patterson* (with whom was *T. M. Marshall*), for defendant in error, cited Edgarton *v.* Page, 6 E. Smith (N. Y.) 284; Briggs *v.* Thompson, 9 Barr 339; Bennet *v.* Bittle, 4 Rawle 339; Tiley *v.* Moyers, 7 Wright 404.

The judgment of the court was entered October 16th 1871.

PER CURIAM.—The questions arising out of the proof in this case were properly left to the jury. Taking care of the key of the house and repairing the floor after the tenant had voluntarily left, were no eviction. He would have been entitled to enter if he had returned—but he did not return. He was neither put out nor sold out by the plaintiff. If the acts of the plaintiff would have been no defence in defendant's favor, it would not avail the surety, and we are very clear they would not have availed him.

Judgment affirmed.