231 P.2d 435

**TODARO et al. v. GARDNER.**

No. 5290.

Supreme Court of Arizona.

May 9, 1951.

W. T. Choisser, of Phoenix, for appellants.

Rawlins, Davis, Christy, Kleinman & Burrus, Phoenix, for appellee.

LA PRADE, Justice.

This is an appeal from a judgment secured against the defendants below, in the sum of $5,000 for money loaned. Defendant appellants have challenged the sufficiency of the evidence to sustain the judgment.

The factual situation out of which this controversy arose is as follows:

Plaintiff claims and testified that while negotiating with the defendants for the purchase of their auto court for the sum of $210,000, he was importuned by the defendants and did "advance" them $5,000 with which to keep certain mortgage payments

current in order that "the property would be available if and when we got our contract agreed upon." Defendants on the other hand contend that they had agreed to sell the premises to plaintiff and that the plaintiff had paid the $5,000 as earnest money on the purchase price. Plaintiff admitted that at the time he paid over the $5,000, he had already agreed to purchase the premises and that the terms had been agreed upon; and asserted that his only concern was to determine, with the aid and assistance of his lawyers at Salt Lake City, whether the property was subject to any governmental rent or tenancy controls. Specifically in this behalf the plaintiff testified as follows: "A. In my dealings with Mr. Fontana and Mr. Todaro in Mr. Choisser's office it was said that I would clear this matter with my attorneys in Salt Lake City with respect to these priorities, and if the priorities were clear, then we would draw a contract for the purchase of this property, and if this were not cleared with them, that this five thousand dollars would be *returned to me*." (Emphasis supplied.)

Following preliminary negotiations and dickerings in the office of defendants' attorney on June 28, 1947, the parties all repaired to the office of the Arizona Title Guarantee and Trust Company, where it was contemplated that the deal would be consummated by the execution of the necessary instruments.

In the office of the title company an escrow officer by the name of Dumont was contacted. At that time and place *plaintiff* gave all of the information to the escrow officer covering terms and conditions of the sale which were to be contained in the escrow instructions. In these escrow instructions it was provided that the purchase price was $210,000; cash handed the escrow officer, none; *cash handed direct to the sellers as earnest money, $5,000;* $10,000 payable on or before August 8, 1947; $10,000, to be represented by personal note outside of escrow; assumption of two mortgages totaling $75,507.21; assumption of note to Seaboard Finance Company, approximately $16,895.48 (furniture—note and mortgage); balance of $92,597.31 to be covered by agreement of sale payable at the rate of $1,000 per month. Provision was also made for payment of escrow fee, title fee, mortgage policy, deed, taxes, proration of street-paving liens, proration of Water Users Association assessments, proration of fire insurance, provisions for interest, rents to be adjusted, bill of sale for personalty, and provision for possession on August 8, 1947. At the time plaintiff parted with his $5,000 check, he demanded a receipt from the defendants. This receipt was prepared by the escrow agent, signed by the defendants and delivered to plaintiff; retained by the plaintiff and produced by him at the trial. The receipt was entitled "Earnest Money Agreement" and acknowledged the receipt of $5,000 as *earnest money* and *part purchase*

*price* of the property, for the full purchase price of $210,000, payable as follows:

$  5,000  by the above deposit, and
$ 20,000  on or before August 8, 1947;
$ 77,000  by mortgage to First Federal Savings & Loan Ass'n;
$ 16,895  by note to Seaboard Finance Company; and
$ 91,105  by agreement of sale.

————

$210,000

With reference to this receipt, plaintiff gave the following testimony:

"A. * * * I accepted the receipt as having been signed by them.

"Q. As part of the transaction? A. As part of the transaction, yes."

At the trial, when asked to produce the check, plaintiff testified that he did not have it with him. When asked why, he answered: "It just didn't ever occur to me. I am not used to these things very much." He testified that he had not seen the check since it was delivered and didn't know whether the check had been presented for payment to his bank, and did not know whether it had been paid, which testimony of course was patently untrue or he would not have brought the lawsuit.

The transaction in the title company office occurred on Saturday afternoon, at which time the escrow officer told them that he would type out the instructions, contract, etc., on the following Monday morning and mail them to Mr. Gardner at Salt Lake City. The title officer, Mr. N. L. Dumont, was called by *plaintiff* as his witness. Mr. Dumont testified that: "Mr. Gardner wanted a receipt for the five thousand dollars. I told him on behalf of the title company I couldn't give him a receipt for the five thousand dollars in view of the fact that it was money passing direct", *and that at the request of Mr. Gardner he made out "this earnest money receipt".* Mr. Dumont also testified that he made the notation in the escrow instructions and in the receipt that the $5,000 had been paid direct to the sellers as earnest money and that no mention of a loan was made in his presence. Plaintiff testified that the defendant Fontana told him that they (sellers) were in arrears on the property and,

"* * * some money had to be forthcoming at once to be able to keep the property in their hands, so that if we proceeded to deal on it further and arrived at a contract which we were going to agree on— *was agreed upon,* that then the property would be available to deal upon, and—

* * * * * *

"The nature of the obligation was some payments due on the property, and the money wasn't available to pay them, and so if I would advance some money so that these payments could be kept up, * * * when we got our contract agreed upon, and at that time— * * * At that time I put up five thousand dollars so that these payments could be kept current." (Emphasis supplied.)

In reference to the receipt plaintiff testified as follows: "A This is a temporary receipt given me in the title company's office, *as a personal receipt for the money which I had given them, to be held until such time as a contract could be drawn after it had been cleared by my attorneys."* (Emphasis supplied.)

On *July 1st* the title company wrote plaintiff that they had forwarded escrow instructions in triplicate and asking for his signature and the return of them. Receiving no response, on July 22d they again wrote and asked for the return of the executed instructions. Some time after this—the evidence does not disclose when—the title company received back their original letter of July 22d, to which was appended in longhand the following remarks: "Dear Mr. Dodds,

"I am sorry to be so tardy in answering this letter. However I have been away for some time and just returned day before yesterday. I am sorry also to have to inform you that my deal Vito Todaro, et al. *has definitely and permanently been called off, because of circumstances beyond my control.* I thank you people anyway for your help in the matter and we will be in a position to deal again sometime.

"J. D. Gardner". (Emphasis supplied.)

On September 5th plaintiff wrote to defendant Todaro and suggested that in view of his "uncertainty of the status of the property under government civilian authority regulations" that the parties should get together on a lease basis. At the beginning of the letter he stated: "My attorney, Mr. L. S. Richards, just informs me that he has received a letter from Mr. Choisser, advising for the first time that you have some question as to whether you should return the money *which was deposited in anticipation of a deal between us.* I hope an issue will not be made over the matter, and have to suggest an idea which I think might meet all of the circumstances." (Emphasis supplied.) It will be noted that right here he did not assert, claim or intimate that he had made a loan of money but acknowledged that " * * * the money * * * was deposited in anticipation of a deal between us."

Plaintiff's only witness, other than himself and the title company officer, Dumont, was a Mr. Ray Wilson who had previously been employed by him in the management of his various motor hotels. Mr. Wilson testified that he was present with all of the parties in the office of Mr. Choisser *before* they all went to the title office; that " * * * Mr. Choisser proposed that Mr. Gardner give them an *'advance deposit'* of five thousand dollars contingent on Mr. Gardner's attorney accepting the proposed terms of the purchase" and that " * * * Mr. Gardner brought up in case his attorneys went over this and it wasn't agreeable to them, that money was to be *returned,"* (emphasis supplied) and "Q. What part of the agreement was it Mr.

Gardner's attorneys were to ratify? "A. That part we discussed in your office that day about the status of the veterans, whether if it was sold to Mr. Gardner, whether he would be liable at any time by the United States Government, to take it out of a motor court operation and into a veterans housing operation." Other illuminating testimony given by the plaintiff is that during the sixty-day period of negotiations he had talked to the defendant Todaro on not to exceed two occasions and that he had never seen or talked to the defendant Fontana until he met him in the office of Mr. Choisser immediately preceding the visit to the office of the title company.

The sole question to be determined in this case is whether the evidence substantiates plaintiff's cause of action for money loaned. Appellees rely upon the proposition that it is the law in this jurisdiction that this court will review the facts in the light most favorable to the prevailing party, and if there is any reasonable evidence to support the judgment of the trial court the judgment will not be disturbed. We of course are acquainted with this rule and of the many holdings of this court that conflicts of evidence are within the sole province of the trier of facts for determination and that the trial court, sitting without a jury, is judge of the credibility of witnesses, the weight of the evidence, and reasonable inferences to be drawn therefrom. Rogers v. Greer, 70 Ariz. 264, 219 P.2d 760. For collection of cases, see 2 Arizona Digest, Appeal and Error, ☞987 through ☞1011. In our case of Owl Drug Co. v. Crandall, 52 Ariz. 322, 80 P.2d 952, 954, 120 A.L.R. 1521, this court recognized that it was the duty of this court to accept the jury's decision on a conflict of the evidence. In this respect the court said: " * * * We adhere to that rule but, where from the evidence it is clear that reasonable men can come to but one conclusion, we have never hesitated to set aside a jury's finding contrary to such conclusion. In this case we hold there is no evidence to support a verdict of negligence. * * *"

A careful and close analysis of the plaintiff's testimony shows that he nowhere testified directly to having made a loan. The sum and substance of his testimony is to the effect that he had orally agreed to purchase the property; that all of the terms and conditions had been agreed upon except one, namely, that he was to get the assurance of his attorneys that the property was not subject to any governmental rent or tenancy controls and that he had advanced them $5,000 with which to meet certain obligations involving the property. He specifically testified that if the rent restrictions were not cleared up that his $5,000 was to be returned to him. These rent restrictions, if they existed, were the contingency necessitating the return of his deposit. The plain implication is that if the

restrictions did not exist. then the $5,000 was to be applied on the purchase price. This is confirmed by his witness Wilson. His other witness, Dumont, testified that the $5,000 had been accepted as *earnest money* without any limitations. The only suggestion disclosed in the entire record that there was any loan of money is contained in the allegations of the complaint and the argument of counsel to the trial court. It must be remembered that the judgment under consideration is predicated solely on a complaint for money loaned. The cause of action is not for a rescission of the contract and was not tried on that theory, and did not seek the return of the $5,000 on this basis. The allegations of the complaint, plus counsel's argument, cannot be used in lieu of testimony and fails to furnish any persuasive support for the theory that plaintiff loaned two strangers, one of whom he had talked with on only two occasions and the other one whom he had never seen, $5,000 without security of any kind. For all that the record discloses, the only knowledge plaintiff had of defendants was that they were owners of the court worth $210,000, against which there were two mortgage liens in excess of $75,-000 and a chattel mortgage on the furnishings of approximately $17,000, and according to his testimony the defendants had confided to him that they were in arrears in their payments due on the property and were in need of money to meet these arrears so as to enable them to retain the property.

Plaintiff having failed to produce any direct testimony or any testimony from which an inference might be reasonably drawn to substantiate the theory of a loan, we are compelled to hold that the judgment is wholly unsubstantiated by any competent evidence. Undoubtedly the trial court was influenced by the fact that the defendants, some sixty days after the abandonment of the contract by plaintiff, were able to and did sell the court for $210,000 but upon different terms. Counsel have also argued that it would be unfair and inequitable to allow defendants to retain the money upon the theory that such retention would constitute an unjust enrichment. This argument has no place here because such a suggestion would have to be predicated upon the theory of a contract and its rescission. We are not here concerned with the rights of a purchaser in a contract for the sale and purchase of land where the right of rescission is claimed or the attempt is made to avoid a forfeiture. Plaintiff bases his right to recover the $5,000 here involved and the judgment of the trial court was based solely upon the ground of a loan to defendants. As above pointed out, this claim is wholly unsupported by the plaintiff's evidence though giving it and all reasonable inferences to be drawn therefrom full faith and credit.

The judgment of the lower court is reversed and the cause remanded to the trial court with directions to enter judgment for the defendants.

STANFORD, PHELPS and DE CON-
CINI, JJ., and DON T. UDALL, Superior
Court Judge, concur.

LEVI S. UDALL, C. J., being disquali-
fied, the Honorable DON. T. UDALL,
Judge of the Superior Court of Navajo
County, was called to sit in his stead.