382 P.2d 678

**WASHINGTON NATIONAL INSURANCE COMPANY, a foreign corporation, Appellant,**

v.

**DALE BENZ, INC., CONTRACTORS, an Arizona corporation, Appellee.**

No. 7049.

Supreme Court of Arizona.

En Banc.

June 19, 1963.

Evans, Kitchel & Jenckes, by Ralph J. Lester, Phoenix, for appellant.

Williby E. Case, Jr., Yuma, for appellee.

T. J. MAHONEY, Superior Court Judge.

The appellee, plaintiff below, brought suit to rescind three policies of insurance with the appellant-defendant insurance company, and to recover the premiums paid

on these policies. Judgment was entered against the insurance company for $5,232.-80 and costs, this being the full amount of the premiums paid by plaintiff on the three policies.

Rescission of the policies was based on alleged fraudulent misrepresentations made by the agent of the defendant, K. E. Porter, which misrepresentations induced the plaintiff to take out the insurance policies. The defendant's first assignment of error charges that the plaintiff's evidence is not sufficiently "clear and convincing" to sustain a finding that fraudulent misrepresentations were in fact made.

Review of evidence by this court to determine whether it meets the standard "clear and convincing" is limited to testing the inherent reasonableness of the evidence, viewed in a light most favorable to sustaining the findings of the trial court, Smith v. Connor, 87 Ariz. 6, 347 P.2d 568 (1959); Murillo v. Hernandez, 79 Ariz. 1, 281 P.2d 786 (1955). When the occasion demands, we will examine the evidence, extensively and in detail, to judge whether a reasonable and unprejudiced mind could reach the conclusion reached by the trial court, cf. Smith v. Connor, supra.

It is the plaintiff's contention that Porter, in the negotiations leading up to the issuance of the insurance policies, represented to the plaintiff that premiums paid on the policies would be tax deductible to the corporation, and that Porter or the defendant insurance company would obtain approval of the Internal Revenue Service for this deductibility. The sole evidence in support of this contention came from the president of the plaintiff corporation, who was the insured:

"Q  What was your purpose in buying these policies of life insurance, Mr. Benz?

"A  It actually had a twofold purpose; one of them, we could spend tax dollars buying insurance that was payable to the corporation in the event of my death to more or less beef up the assets of the company.

"Q  What was your primary purpose in the purchase of this life insurance?

"A  It was to purchase it with tax dollars that we would have normally lost.

"Q  At any times during these conversations that eventually led up to the purchase of insurance did Mr. Porter represent to you that the premium paid by that corporation would be a tax deductible expense to the corporation?

"A  He did.

"Q  Did he at any time represent to you that he would obtain a clear-

ance of this tax deductibility from the Bureau of Internal Revenue?

"A That was the stipulation upon which I bought it and did not get.

"Q That was your primary purpose in purchasing the insurance, to obtain a tax write-off for the corporation?

"A I asked for an approval by the Internal Revenue Department that it was within the code."

The defendant's version of these matters is that one of the policies was sold for the purpose of permitting the corporation, in the event of Benz's death, to redeem from the Benz estate sufficient of his stock in the corporation to permit the estate to pay taxes and administrative expenses. It was represented that under 26 U.S.C. § 303, the proceeds of this policy would not be taxed as a dividend when received by his estate. The two remaining policies were sold with the idea that they would become part of a pension trust, which would pay retirement benefits to Benz and other high level employees of the corporation. It was represented that, if the pension plan was approved by the IRS, the premium payments would be deductible to the corporation under 26 U.S.C. § 401. No clearance was obtained from the IRS because Benz failed to provide the information necessary to include other employees in the pension program, a requirement for IRS approval.

With regard to this version of the negotiations, the plaintiff (Benz) testified:

"Q Do you recall any conversation with Mr. Porter about the possibility of the corporation setting up some sort of system, pursuant to which you and the other highly paid officers of the company would receive compensation after you retired from the corporation's activities in connection with the corporation?

"A I had a conversation with him pertaining to myself but no other employees.

"Q What was the substance of that conversation?

"A *It was some form of a retirement program which I don't understand insurance and it didn't make too much of an impression at the time.*" (Emphasis added.)

\*  \*  \*  \*  \*  \*

"Q Did you understand whether or not the $150,000 which the corporation would receive would be subject to income tax when it got it?

"A No; I did not.

"Q What was your understanding in that regard?

"A *I didn't understand it at all, that is why we hired these people.*" (Emphasis added.)

Benz also gave the following testimony concerning the efforts of Porter to secure the IRS clearance:

"Q After your purchase of these policies and the payment of premiums, did you thereafter request of Mr. Porter that he supply you with these acceptances or clearances from the Bureau of Internal Revenue?

"A. I did.

"Q How did you do that?

"A By letter.

"Q Were you subsequently supplied such?

"A No, I did not get it.

"Q Did you have any further conversation with Mr. Porter relative to his obtaining such a clearance or acceptance?

"A *We had one or two phone calls but I don't remember what they were about.*" (Emphasis added.)

Porter's version of the transaction is supported by the testimony of John Pope, bookkeeper of the plaintiff corporation who was called by the plaintiff:

"Q Mr. Pope, do you recall any conversation with Mr. Porter regarding a pension plan for the corporation?

"A Yes.

"Q Can you tell us when that was to the best of your recollection?

"A That is pretty hard to remember. It seems to me it was before the purchase and the general idea was that there were certain individuals who would participate to a small extent and Mr. Benz to the largest extent; that there would be forthcoming a letter of assent from the Internal Revenue Bureau and that was about the size of it.

"Q Did you understand from your conversation with Mr. Porter that it would be necessary to set up some sort of a pension trust?

"A I believe that is what the account was called that we were putting the money in.

"Q. Did you understand that contributions to that trust were deductible?

"A I did, yes.

"Q Did Mr. Porter ever attempt to obtain from you the information required for the creation of such a trust?

"A  Yes.

"Q  Did you provide it to him?

"A  No.

"Q  For what reason?

"A  May I elaborate?

"Q  By all means.

"A  Mr. Porter called me when Mr. Benz was out of town, in the State of Virginia. We had two or three of our employees, I believe, down there that would have—that I was asked to get the names, first day, length of employment and so on. Inasmuch as Mr. Benz was there, I called him and requested that he do so and told him the reason and Mr. Benz told me that was not necessary, that there had never been anything discussed between him and Mr. Porter about other employees and for that reason the information was not given to Mr. Porter.

"Q  Did you understand from your conversation with Mr. Porter it would be necessary to include more employees than Mr. Benz in this pension plan?

"A  That is what Mr. Porter had told me; yes.

"Q  He had told you that you would have to include a number of the corporation's employees to qualify the trust, is that right?

"A  He had told me that.

"Q  You are employed by the corporation, are you not?

"A  Yes.

"Q  To your knowledge was the necessary information ever furnished to Mr. Porter?

"A  No, not the knowledge that Mr. Porter wanted."

In view of the admitted forgetfulness of Benz as to details of the negotiations and in view of his professed lack of understanding of tax and insurance matters it is not reasonable to believe that Benz's account of the negotiations tells the full story. There is no fundamental conflict between the versions of the parties. Benz said that Porter told him the premium payments would be deductible and also said other things, relating to a pension plan, which Benz had either forgotten or never understood. Porter identified these missing details of the negotiations as a disclosure of the conditions upon which the IRS would permit tax deduction of the premiums. Porter's full disclosure of these conditions, and Benz's unwillingness to comply with them is confirmed by the plaintiff's own witness, Pope.

The record before us fails to show clear and convincing evidence that misrepre-

sentations were in fact made to the plaintiff. It is unnecessary to go further and consider the other assignment of error. The judgment is reversed, with directions to enter judgment in favor of the defendant insurance company.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concurring.

NOTE: Justice LORNA E. LOCKWOOD, having disqualified herself, the Honorable T. J. MAHONEY, Judge of the Superior Court of Pinal County, Arizona, was called to sit in her stead and participate in the determination of this appeal.