457 P.2d 251

**TRI-STATE INSURANCE COMPANY,**
Appellant,

v.

**Archie MAXWELL and Rose Maxwell,**
his wife, Appellees.

No. 9656.

Supreme Court of Arizona.

In Banc.

July 17, 1969.

Gust, Rosenfeld & Divelbess, by Fred H. Rosenfeld, Phoenix, for appellant.

Skousen, McLaws & Skousen, by Richard E. Skousen, Mesa, for appellees.

McFARLAND, Justice:

This is an appeal from a judgment entered by the Maricopa County Superior Court in favor of the appellees (plaintiffs) holding the appellant Tri-State Insurance Company liable on its motor vehicle dealer's bond which was issued to defendant Advance Mobile Homes, in compliance with § 28-1305, subsec. B, A.R.S. The court also gave Tri-State judgment against Allen and Beverly Stacy, indemnitors on the bond, and denied judgment against one J. R. Scrivner, agent of Advance. Only Tri-State has appealed.

Following are the findings of fact and conclusions of law as entered by the trial court:

"FINDINGS

"1. In December, 1963 plaintiffs entered in a contract with defendant, Advance Mobile Homes, for the purchase of a 12' x 60' trailer for the sum of $10,500.00.

"2. Plaintiffs agreed to give to said defendant real property valued by the parties at $5,500.00, a New Moon trailer valued at $1,500.00, a Lone Star trailer valued by the parties at $2,500.00 and the sum of $1,000.00 cash to be paid at the time of delivery.

"3. Plaintiffs delivered to said defendant, in accordance with the contract, a deed to the real property and title certificates to the two trailers.

"4. In December 1963, said defendant, through its agent, informed plaintiffs that the trailer was sold and could not be delivered. This was a false representation, which defendants knew to be false, was material, was relied on by plaintiffs who had a right

so to do, was intended to be relied upon and as a result thereof, plaintiffs were damaged.

"5. Defendant, through its agent then offered to sell the trailer for an additional $500.00. Plaintiffs refused to pay the additional sum demanded.

"6. Said trailer had a 'for sale' sign on it and remained on defendant's lot for several months after the statement by defendant's agent regarding the sale.

"7. Plaintiffs then demanded their deed and title certificate be returned. Defendant's agent informed plaintiffs that the documents could not be returned. This was a false representation which defendants knew to be false, was material, was relied upon by plaintiffs who had a right so to do, was intended to be relied upon and as a result thereof, plaintiffs were damaged.

"8. In December 1963 plaintiffs, relying on the above misrepresentations, then agreed to purchase another trailer from defendant for the same price. Defendant's agent informed plaintiffs that the new trailer would be manufactured, that it would be the same as the original trailer in all respects and that it would be delivered on January 2, 1964. These statements were false, defendant knew them to be false, were material, were relied upon by plaintiffs who had a right so to do, were intended to be relief upon, and as a result thereof, plaintiffs were damaged.

"9. That the new contract signed by the parties showed reduced figures solely for income tax purposes.

"10. The defendants never delivered any trailer to plaintiffs.

"11. The defendants never returned the deed or title certificates to the trailers to the plaintiffs.

"12. Plaintiffs' real property was deeded by defendant to its agent, was encumbered by said agent and cannot be returned to plaintiffs free of liens.

"13. Plaintiffs kept physical possession of the two trailers. Some property was taken out of one of the trailers by a tenant of the agent of the defendant. Vandals did some damage to the trailer during the last three years. Plaintiffs did not have the use of said trailers for three years after they delivered the title certificates to defendant.

"14. The plaintiffs applied for and obtained duplicate title certificates to the two trailers in February of 1967.

"15. The plaintiffs suffered the following damages.

"(a) Loss of real property: $5,500 plus interest at 6% from January 2, 1964. This value was established by agreement of the two parties in December 1963.

(b) Loss of use and depreciation of two trailers: $2,000.00. This sum is based on one-half the agreed value of the two trailers in December 1963.

"16. There was in force at the time of the misrepresentation above referred to, a motor vehicle bond issued by Tri-State Insurance which insured to the benefit of persons who might suffer loss by reason of any unlawful act of the licensee.

"17. Cross-defendants Allen Stacy and Beverly Stacy signed a written agreement indemnifying Tri-State Insurance Company against all losses incurred by reason of any claim upon the bond.

"18. The evidence is not clear and convincing that defendant J. R. Scrivner knew that the statements he made to plaintiffs as agent of defendant Advance Mobile Homes, Inc., were false.

"19. The present value of the lot deeded by plaintiffs to defendant Advance Mobile Homes is not in excess of the mortgages presently against it.

"*Conclusions—*

"1. As the result of fraudulent misrepresentations of defendant, Advance Mobile Homes, Inc., plaintiffs are entitled to judgment in the sum of $7,500.00 with interest

on the sum of $5,500.00 from January 2, 1964.

"2. Plaintiffs are entitled to judgment against defendant Tri-State in the same amount as the result of the wrongful act of defendant, Advance Mobile Homes, Inc.

"3. Plaintiffs are not entitled to a judgment against defendant J. R. Scrivner.

"4. Tri-State Insurance Company is entitled to a judgment over against Allen Stacy and Beverly Stacy.

"5. Tri-State Insurance Co., is not entitled to a judgment over against J. R. Scrivner."

The appellant Tri-State requests this Court's consideration of the following questions:

"1. Were plaintiffs damaged by the transfer of the two used trailer titles to appellant's principal?

"2. Was the $5,500 for loss of the real property a liquidated or an unliquidated sum and if liquidated is the defendant liable for interest after the termination of its bond?

"3. Question 3 is in the alternative of questions 1 and 2. If the amount of damages is found to be liquidated should not the total amount be $6,000 as shown on the written contract and should not that amount be reduced by the actual value of the two trailers?

"4. Was Advance Mobile Homes guilty of an unlawful act?

"5. Was J. R. Scrivner a bona fide purchaser of Lot 27 when he received the deed to the property from Advance Mobile Homes?"

It is immediately apparent that, with exception of the question as to interest after termination of the bond, the defendant in every instance seeks to have this Court review and rule on issues of fact.

The evidence adduced at the trial in the instant case was in sharp conflict, a fact which Tri-State admits in its brief in discussing damages wherein it states "clearly the actual value of the property remains in dispute" and "We feel there is a true dispute as to the actual value of the property." Other conflicting testimony is evident in the following excerpts from appellant's statement of the facts:

"After a sales discussion, plaintiffs agreed to sign and did sign a contract for the delivery of a trailer. The testimony conflicts at this point, Mr. Scrivner stating that the plaintiffs agreed to purchase a trailer to be constructed. Mr. and Mrs. Maxwell stated they purchased the trailer they saw on the Pioneer lot. The lower court found the plaintiffs contracted to buy the trailer on the lot. * * *

*    *    *    *    *    *

"In return for the deed and the two car titles the plaintiffs stated they received from Mr. Scrivner a contract which was executed by the plaintiffs but was not executed by anyone for the defendant Advance Mobile Homes. The Maxwells stated the agreement was that the trailer on the lot would be delivered to the Maxwells for the two trailers and the deed to the property and for an additional $1,000 to be paid at the time of delivery. Mr. Scrivner testified that the agreement signed that night was the contract in evidence, Exhibit 8 calling for Advance to manufacture a trailer. Mr. and Mrs. Maxwell both testified that the contract signed at their trailer home was later delivered by them to Mr. Scrivner at a second meeting and a new contract was later supplied in its place. Mr. Scrivner specifically testified that no other contract was ever executed by and between the parties and that plaintiffs at all times knew that the trailer to be delivered by Advance Mobile Homes to the plaintiffs was to be manufactured."

In Nash v. Goor, 94 Ariz. 316, 383 P.2d 871, we said:

"It is elementary to say that this Court is bound by the facts found in the trial

court where there is any evidence to support them. Clark v. Ellsworth, 66 Ariz. 119, 184 P.2d 821 (1947)."

The rules governing the actions of this Court with regard to factual issues were well set forth in Patzman v. Marshall, 90 Ariz. 1, 363 P.2d 599, as follows:

"In the ruling on this assignment of error we have a clear line of cases in Arizona that establish the following rules of law: (1). Where the evidence is in conflict, the Supreme Court will not substitute its opinion for that of the trial court. (2). Evidence will be taken in the strongest manner in favor of support of the judgment of the trial court. (3). A judgment will not be disturbed when there is any reasonable evidence to support it. Anderson v. Artesia Investment Co., 66 Ariz. 335, 188 P.2d 455; Sturges v. Tongeland, 83 Ariz. 148, 317 P.2d 941, 942; Eldridge v. Jagger, 83 Ariz. 150, 317 P.2d 942; Daru v. Martin, 89 Ariz. 373, 363 P.2d 61."

Of course there are situations where we will not accept the findings of the trier of fact, such as where the record contains no evidence to support such findings, Todaro v. Gardner, 72 Ariz. 87, 231 P.2d 435, or where a detailed examination of the evidence convinces this Court that a reasonable and unprejudiced mind would reach a conclusion opposite that found by the trier of fact, Todaro v. Gardner, supra; Washington National Insurance v. Dale Benz, Inc., 94 Ariz. 204, 382 P.2d 678.

There is no good reason to set forth herein all the conflicting evidence adduced at the trial of this matter. Suffice it to say that we have carefully studied the record on appeal and are satisfied that there is reasonable evidence to support the judgment of the trial judge.

Tri-State also contends that if the damages are liquidated they should be based on the $6,000 figure found in the final agreement between the parties. However, appellant states in its brief:

"* * * We feel there is a true dispute as to the actual value of the property. The trial court was at liberty to determine the fair value of the property at the date plaintiffs were damaged and was not absolutely bound by the testimony of the agreement to value the property prior to the written agreement, or even by the written agreement itself—* * *"

Consistent with its other findings, the trial court based its valuation of the property on the first agreement and obviously was of the opinion that the final agreement was signed by the plaintiffs solely as a result of the fraud and duress of Advance Mobile Homes. There is sufficient evidence in the record to show that the court's value was fair and reasonable.

This of course affirms the conclusion that $5,500 of the damages was a liquidated sum, and bears pre-judgment interest from January 2, 1964. However, Tri-State urges upon us the theory that since its bond terminated December 31, 1963, its liability for interest on the liquidated damages should automatically stop on that same date. Tri-State failed to supply any authorities to support this argument, and our own research has not disclosed any.

The appellant confuses the term, which is regulated by the life of the bond, during which it can become liable for the wrongs of its principal and the duration of time for which it remains liable for damages incurred during the bond's existence. It is academic that the surety cannot be held to answer for its principal's obligations incurred before or after the term of the bond unless the instrument so provides. 72 C.J.S. Principal & Surety §§ 108–110. But an obligation incurred during the effective period of the bond is a continuing debt, together with interest thereon, and the "only legal way the defendant could relieve himself from his obligation was to discharge it." Central-Penn. Nat. Bank of

Philadelphia v. Tinkler, 351 Pa. 123, 40 A.2d 389; see also, O'Shea v. North American Hotel Co., 109 Neb. 317, 191 N.W. 321, 323–324. In Plummer v. Wilson, 322 Pa. 118, 185 A. 311, a surety on a lease claimed his liability for unpaid rent terminated when the landlord recovered possession, thereby effectively terminating the surety agreement. The court held:

"We find no merit in the contention of defendant that his liability as surety was terminated when plaintiffs recovered possession of the demised premises. It will be noted that no rent is claimed beyond the date when plaintiffs re-possessed the premises. Therefore the liability sought herein to be enforced against defendant is only for the rent already accrued. *Such liability came into existence with each default in the payment of rent and continued in effect so long as any of the rent accrued remained unpaid.* King v. Blackmore, 72 Pa. 347, 13 Am.Rep. 684; see Coydon C. G. & C. Co. v. Dickinson, 36 Law T. Rep. 135. Even if defendant's contention that the ejectment terminated the lease were sustained, it could not release him from his obligation as surety to pay the rent that had actually accrued while the lessee was in possession of the premises. See Pier v. Carr, 69 Pa. 326; Rafferty v. Klein, 256 Pa. 481, 100 A. 945; Hochman v. Kuebler, 53 Pa.Super. 481." [Emphasis added.]

In a recent decision of this Court we said that an insurer in fact, if not in law, stands in the place of its insureds. Camacho v. Gardner, 104 Ariz. 555, 456 P.2d 925 [June 26, 1969]. This principle was applied to a surety in Modern Brokerage Corporation v. Massachusetts Bonding & Ins. Co., 54 F.Supp. 939, reargument denied, 56 F.Supp.

696 (S.D.N.Y.), where the court, referring to the surety, said:

"* * * Defendant obviously stands in the shoes of the principal contractor. American Fidelity Co. v. Velie, 8 Cir., 196 F. 190–193, certiorari denied 226 U. S. 607, 33 S.Ct. 112, 57 L.Ed. 379. It has the right generally to assert any defense which its principal Quincy might assert if sued. The natural limit of the obligation of the surety is to be found in the obligation of the principal. Cage's Executors v. Cassidy, 23 How. 109–116, 16 L.Ed. 430; Benjamin v. Hillard, 23 How. 149, 164, 16 L.Ed. 518; Smith Engineering Co. v. Rice, 9 Cir., 102 F.2d 492–499, certiorari denied 307 U.S. 637, 59 S.Ct. 1034, 83 L.Ed. 1519; Phelps v. Dawson, 8 Cir., 97 F.2d 339–341, 116 A.L.R. 1343."

A surety's liability is co-extensive with that of its principal to the extent of the amount of the bond. Sorensen v. Robert N. Ewing, etc., 8 Ariz.App. 540, 448 P.2d 110; State ex rel. and to Use of Scarborough v. Earley, 240 Mo.App. 868, 219 S.W.2d 879. Thus the surety not only can assert the rights of its principal but also must accept the principal's obligations which arose during the life of the bond and the surety remains obligated to the same extent as the principal until the debt is discharged by payment. The fact that the surety agreement expired in no way affects the obligation.

In the instant case it cannot be argued that the principal, Advance Mobile Homes, is not chargeable with interest on the liquidated amount of damages. The surety, Tri-State, stands in no better position.

For the foregoing reasons the judgment of the Superior Court is affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and HAYS, JJ., concur.