485 P.2d 585

**Richard R. DAWSON and Val Dawson, husband and wife, Appellants,**

v.

**VISION–AIR, a partnership composed of Robert Lienhart and George Tunning, Appellees.**

**No. 1 CA–CIV 1420.**

Court of Appeals of Arizona, Division 1, Department A.

June 7, 1971.

Conway T. Ryan, Chandler, for appellants.

Stanfield, McCarville & Coxon by Franklin D. Coxon, Casa Grande, for appellees.

DONOFRIO, Judge.

This is an appeal by appellants Dawson, who were defendants in the trial court, from a judgment rendered against them in an action brought by plaintiff-appellee, Vision-Air, for the purchase price of a used refrigeration unit which Vision-Air installed in defendants' place of business. This appeal is also from the denial of defendants' post-judgment motions for amended findings and for new trial. The parties will be referred to as they appeared in the trial court.

Plaintiff was a licensed air conditioning contractor. On May 15, 1968, defendants, operators of a tavern, entered into a contract with plaintiff for the purchase and installation of a five-ton Arctic Circle used air conditioner for $1200 in their place of business. The unit was to carry a one-year warranty on parts and labor. The contract specifically provided that "increasing and incoming power [would] be supplied by [defendant] owner." With

some difficulty, due to the electrical wiring of the building, plaintiff installed the unit. Details of this difficulty will be touched upon later.

In March 1969 when plaintiff did not receive payment for the unit and its installation, plaintiff filed suit to recover the amount of the contract, $1200. Defendants answered, alleging total lack of consideration because of the failure of the unit and plead that they were improper parties to the action because Lafayette Enterprises, a corporation, was the proper party defendant. These issues were tried to the court.

The trial consumed one afternoon. Both parties testified and introduced various exhibits and pictures. Two witnesses testified for the defense, an electrician and the bartender at defendants' place of business. Defendants introduced various pictures showing the electrical setup in defendants' building and different shots of the duct work. There was no dispute as to the written contract and its terms. On the face of the contract it shows that it was submitted by Vision-Air to Richard Dawson and signed by Richard Dawson and by George Tunning, one of the partners of Vision-Air.

After the matter was submitted, the court rendered the following opinion upon which the judgment was based:

"The Court has heard the evidence in this case, the argument of counsel, and has considered the exhibits. The Court finds that this is a written contract, Exhibit # 1, the terms of which cannot be changed by parol evidence. It is a contract between Plaintiff, Vision-Air through George Tunning, and the Defendant, Richard Dawson, as an individual. There is nothing in the record to sustain Exhibit # 1 as a contract between the Plaintiff and some corporation. The Court further finds from the evidence that the Plaintiff installed the unit referred to in the contract in accordance with the terms of the contract, and that whether or not it operated off and on is obviously connected with the electrical questions in the case, and the contract and the evidence conclusively show that the question of electrical wiring or supplying of power was the duty of the Defendant under the contract. The record further shows, and the Court finds that at various times, this unit did operate, both in 1968, and apparently might or might not have operated in 1969 if it was tried. The question of whether or not it did operate a year later in 1969 involves some service and some electrical questions. Therefore, the Court finds that the evidence shows that Plaintiff is entitled to judgment against the Defendant in the sum of $1,200.00, with Plaintiff's costs in this case, interest on the judgment to run from the time it is entered. The Court is denying the interest from September 26, 1968, as prayed for in the complaint, for the reason that there is nothing in the contract to provide for any.

"Counsel may submit a formal written judgment accordingly."

■ This appeal presents two questions. The first is whether the evidence supports the court's finding that the defendants were the proper parties defendant. We have no difficulty in answering this question in the affirmative. Exhibit # 1 establishes that the contract was a proposal by Vision-Air submitted to and accepted by defendant Richard Dawson. There is nothing to indicate that defendant signed in any capacity other than as an individual. Plaintiff testified that he dealt with Dawson as an individual; that he had never heard of the corporation, Lafayette Enterprises, nor was it ever mentioned. The conflict in the evidence by reason of defendant's testimony was resolved in favor of plaintiff's evidence. Conflicts of evidence are within the sole province of the trier of fact for determination and are not within the province of this Court to change. Todaro v. Gardner, 72 Ariz. 87, 231 P.2d 435 (1951).

■ The second question is whether the judgment is supported by the evidence.

**598**

Defendants argue that plaintiff has not complied with the agreement in that plaintiff has not properly installed a workable unit. Again, we find a conflict of evidence which the trial court resolved against defendants and it is not within the province of this Court to substitute our judgment for that of the trial court.

This Court must view evidence on appeal in the light most favorable to supporting the judgment of the trial court. Kubby v. Crescent Steel, 105 Ariz. 459, 466 P.2d 753 (1970). In this case the evidence as viewed most favorably in support of the trial court's judgment shows that plaintiff installed the unit the latter part of June 1968. The delay in putting in the unit was due to waiting for defendant to employ an electrician to furnish either an adequate box or hookup. The defendant had an electrician check the amperage and see about a box for the needed 220 line. At that time the electrician did not complete the necessary electrical work for a proper tie-in. It was about a month after the duct work was completed that the electrician went out the second time. At that time, plaintiff was there to hook up the unit but, as it was stated, "the meter loop, or the power on the side of the building, was not charged out" as it should have been. The electrician suggested a temporary tie-in and said that a proper hookup would be made later. Plaintiff installed the unit in that improvised manner, checked it out, and left it working fine. The unit ran a few days and then grounded out. This was the first part of July. Plaintiff then went out and put in another compressor. This compressor proved to be defective and had to be replaced. These repairs took until September. Because of the difficulties, plaintiff agreed to start the one-year warranty in September instead of July. In the fall, after the unit was put in running shape, plaintiff demanded payment from defendants but it was never forthcoming. Plaintiff has done nothing more to the unit.

Briefly stated, plaintiff's testimony was to the effect that defendants were to fur-

nish the necessary electrical line or proper flow of current; that it was the failure to do this which caused the delays and the failures of the unit. There is no question but that under the contract defendants were to be responsible for furnishing the necessary electricity for the proper operation of the unit. The electrician testified that there was a failure in the electrical system in this respect.

The trial court, in coming to its conclusion, accepted the evidence offered by plaintiff. Our thorough review of the record convinces us that the finding of the trial court is supported by ample evidence.

Affirmed.

STEVENS, P. J., and CASE, J., concur.