448 P.2d 110

Vinson D. SORENSEN and Jane Doe Sorensen, his wife, dba V. D. Plumbing & Heating; and Glens Falls Insurance Company, a New York corporation, Appellants,

v.

ROBERT N. EWING, GENERAL CONTRACTOR, an Arizona corporation, Appellee.

No. I CA–CIV 576.

Court of Appeals of Arizona.

Dec. 12, 1968.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by Robert O. Lesher, Tucson, for appellants.

Rawlins, Ellis, Burrus & Kiewit, by Chester J. Peterson, Phoenix, for appellee.

KRUCKER, Judge.

This appeal brings up for review a judgment entered in favor of a general contractor against a subcontractor and the latter's surety. Briefly, the facts are as follows.

Sorensen, the subcontractor, had entered into a contract with Ewing, the general contractor, to furnish all labor, material and equipment for installation of plumbing, heating, air conditioning and outside utilities for the Pinetop-Lakeside High School and elementary school project in Navajo County. This subcontract specifically provided:

" * * * Special attention is to be given to the General Conditions of the Specifications, all of the provisions of which are made a part of this subcontract.

   *     *     *     *     *     *

"A Performance Bond and a Labor Material Payment bond on A.I.A. form A311 are to be furnished the General Contractor as a part of this Subcontract."

These required bonds were duly furnished. The performance bond in favor of Ewing obligated the surety in the amount of $87,129.93. He instituted this lawsuit to recover damages for alleged breaches of this subcontract—failure to complete performance and defective workmanship. The case was tried to the court, sitting without a jury, and the parties stipulated that the court might view the premises in question. The court found in the contractor's favor as to the following items:

| | |
|---|---|
| Bruce Floors, work | $ 242.82 |
| White Mountain Plumbing, work | 100.25 |
| Brooks Insulation Co., work | 249.73 |
| Carl Hadra, work | 597.00 |
| J. H. Welch & Sons, work | 7,319.09 |
| Mayben & Walker, work | 114.80 |
| State of Arizona penalties | 1,125.00 |
| Propane Gas | 1,648.97 |
| Additional repairs needed before the year was up, but not yet done | 852.00 |
| Replacement of gym floor | 13,845.00 |
| | $26,124.66 |

Reduction of this total sum by offset of the amount allowed on defendants' counterclaim resulted in a judgment of $22,926.42 in plaintiff's favor.

■ Before addressing ourselves to consideration of the items allowed as damages, we shall pass upon the surety's contention that it was discharged from liability. In the absence of limitations in the contract, the liability of a surety on a performance bond is co-extensive with that of its principal. Maine Bonding and Casualty Co. v. Foundation Constructors, 105 N.H. 470, 202 A.2d 481 (1964); Dinon Terrazzo & Tile Co. v. Tom Williams Construction Co., 148 So.2d 329 (La.App.1963); Rocky Mountain Tool & Machine Co. v. Tecon Corp., 371 F.2d 589 (10th Cir. 1966). The surety contends that it was released from liability because Ewing had failed to establish the *fact* of injury. There is no merit to this contention when, as here, the surety's obligation was to guarantee performance rather than to indemnify. 72 C.J.S. Principal & Surety § 97. Glens Falls undertook to guarantee that Sorensen would perform the terms of his contract with Ewing. A breach by its principal rendered Glens Falls liable, 72 C.J.S. Principal & Surety § 95, and Ewing was entitled to be placed in the position he would have been in had the contract been fulfilled. Id, § 112.

■ It is further argued by Glens Falls that Ewing's failure to perform certain conditions imposed on him operated to release it. Although we agree that a failure on the part of an obligee to perform certain conditions may operate to discharge the surety, 72 C.J.S. Principal & Surety § 152a, we do not agree that such is the case here. The General Conditions section of the construction specifications provides:

"A. AGREEMENT: The Contractor agrees to the use and occupancy of a portion or unit of the project before

formal acceptance by the Owner provided, the Owner:

\*   \*   \*   \*   \*   \*

2. Secures endorsement from the insurance-carrier and consent of the surety permitting occupancy of the building or use of the project during the remaining period of construction \* \* \*."

Another section provides, in pertinent part:

"A. GUARANTEES: Neither the final certificate of payment nor any provision in the Contract Documents nor a partial or entire occupancy of the premises by the Owner shall constitute an acceptance of work not done in accordance with the Contract Documents or relieve the Contractor of liability in respect to any express warranties or responsibility for faulty materials or workmanship. *The Contractor shall remedy any defects in the work and pay for any damage to other work resulting therefrom, which shall appear within a period of one year from the date of final acceptance of the work unless a longer period is specified \* \*.*

Where warranties or guarantees of longer term are specifically called for or are freely extended by manufacturer, they shall be provided by Contractor." (Emphasis supplied)

■ The parties agree that in applying the foregoing provisions to them, the term "owner" means Ewing and the term "contractor" means Sorensen. The surety predicates its "discharge" argument on (1) "Acceptance" of Sorensen's work on December 20, 1964, and (2) "Use and occupancy" by Ewing of the heating equipment without its consent. The first argument is advanced to relieve both the surety and subcontractor from liability on the grounds that the one-year warranty period had expired on December 20, 1966, and therefore, Sorensen had no duty to remedy any defects or pay for any damage to other work resulting therefrom after said date. The trial court apparently found otherwise, and there being evidentiary support for a finding that final acceptance of the work did not take place until February 9, 1965, we cannot say that such finding was erroneous.

■ As to argument number two, assuming arguendo that the heating equipment installed by Sorensen constituted a "portion or unit of the project" so as to require the surety's consent for its "use" prior to formal acceptance by the School Board, Ewing's unequivocal denial of assumption of the operation of the heating equipment is sufficient to support a finding contra to the surety's contention. We thus find no merit to either claim that the judgment in its entirety must be reversed.

■ The major thrust of this appeal is directed at the evidentiary foundation for the various items of damage, exclusive of the first three listed above. Sorensen had agreed, under the terms of the contract, to remedy any defect in his work and pay for any damage to other work resulting therefrom within a year after acceptance of his work. No useful purpose would be served by detailing the testimony regarding the defectiveness of Sorensen's performance. Suffice it to say there was extensive testimony that the heating equipment installed by him did not comport with the specificaions of the contract. One major defect, to which much testimony was devoted, was the installation of two Fireye units, set up for natural gas, in the boiler. The trial court apparently concluded, not without evidentiary support, that Sorensen did not satisfy the requirements of the contract in that the plans and specifications were replete with notations calling for LP gas. Therefore, in view of the evidence that units set up for natural gas would be highly unsuitable and unsafe for an LP gas system, installation of such units rendered the performance defective. Additionally, there was considerable testimony concerning the installation of pipes which, if believed by the trial court, would justify a conclusion that the work had not been performed in a workmanlike manner as required by the contract. In summary, we

need only say that the evidence supports a finding that Sorensen's work was defective.

Under these circumstances, there being no claim that unreasonable economic waste would result thereby, Ewing was entitled to recover the reasonable cost of remedying the defects, i. e., the cost of making Sorensen's work conform to the contract. Blecick v. School District No. 18 of Cochise County, 2 Ariz.App. 115, 406 P.2d 750 (1965); Haviland v. Dawson, 210 A.2d 551 (D.C.App.1965); Autrey v. Williams and Dunlap, 343 F.2d 730 (5th Cir. 1965); Jones v. Elliott, 172 Neb. 96, 108 N.W.2d 742 (1961); Prier v. Refrigeration Engineering Co., 442 P.2d 621 (Wash.1968); Nelson v. Hazel, 91 Idaho 850, 433 P.2d 120 (1967); Moore v. Werner, 418 S.W.2d 918 (Tex.Civ.App.1967). Where, as here, Ewing had retained a portion of the contract price, his measure of damages was the reasonable cost of completing the contract and repairing Sorensen's defective performance less the part of the contract price still unpaid. Green Manor Construction Co. v. Highland Painting Service, Inc., 345 F.2d 657 (1st Cir. 1965).

In November, 1965, subsequent to the School Board's acceptance but prior to the expiration of the one-year warranty period, a pipe in the gymnasium space heater installed by Sorensen froze and burst, permitting water to escape and flood the floor of the gym, thereby causing extensive damage to the floor. Evidence was presented to support a finding that the water pipe's freezing and consequent bursting was attributable to defective installation, with the resultant flooding and concomitant damage. A subcontractor is liable for the reasonable cost of completion of his contract plus damages sustained to other portions of work performed by another subcontractor. Macaluso v. Thibodeaux, 232 La. 431, 94 So.2d 426 (1957). The fact that the School Board had only "requested" Ewing to repair the gymnasium floor did not operate to relieve Sorensen of his contractual obligation to "pay for any damage to other work resulting" from defects in his work. Ewing was not required to show that he had in fact repaired the floor or was being required to do so. To support his claim for damages for breach of contract by the subcontractor, it was sufficient to show the necessity and cost of remedying the work. Alm Construction Co. v. Vertin, 118 N.W.2d 737 (N.D. 1962).

The defendants challenge the allowance of the Welch Company and Carl Hadra bills on the ground that no proper evidentiary basis therefor exists. Their argument is predicated on the fact that both bills were non-itemized lump sum bills. They argue that replacement of the Fireye units, to which we have heretofore adverted, was not an allowable item of damage, and since it was impossible to determine the portion of the bills allocable to these units, the whole must fail. Their argument in this regard, however, falls in the face of our conclusion that the units installed by Sorensen for natural gas constituted a breach of the contract. The necessity and cost of remedying this defect, i. e., by replacing the units, was established, hence properly allowed as an item of damage.

It is further contended that there is no evidentiary foundation for the $1,648.97 propane gas bill included in the judgment. The contract between the parties provided:

"Cost of butane used while the heating system is being put into operation and balanced will be charged to you [Sorensen] * * *."

The air-conditioning specifications which were incorporated into their contract provided:

"*Each and every phase* of the heating and ventilating system *shall be operated* separately, or in conjunction one with the other, *for a sufficient period of time to demonstrate the ability of the plant to meet the capacity and performance requirements* while maintaining design conditions in accordance with the true intent and purpose of these specifications." (Emphasis supplied)

■ The propane fuel bills covered the period of approximately two months, from December 18, 1964 to February 9, 1965. There was no evidence that operation of the heating system for this two-month period was necessary to "demonstrate the ability of the plant to meet the capacity and performance requirements." Therefore, it was error to allow this item of damage. See, Gilmore v. Cohen, 95 Ariz. 34, 386 P.2d 81, 11 A.L.R.3d 714 (1963).

■ Defendants contend that the award of $852 for additional repairs is erroneous because not supported by competent evidence. We do not agree. The school principal testified as to the existence, during the one-year warranty period, of a leak in the kitchen which caused damage to the ceiling and dry wall. In addition, there was testimony as to defects in two drinking fountains in that they leaked. Mr. Ewing testified that in his opinion it would cost $552 to repair the ceiling and wall damage, and Welch Company's representative testified that in his opinion repair of the leaking fountains would cost between $280 and $350. Since the determination of the cost of repairs is a matter of estimate by a person qualified in the class of work in question, and the defendants neither challenged the expertise of these witnesses to render an opinion nor cross-examined regarding the basis for their respective estimates, they cannot now complain that the trial court accepted them and the allowed $850. See, Blecick v. School District, supra.

■ We find no error in the allowance of the $1,125 assessed as a penalty by the State of Arizona. In their responsive pleading, the defendants admitted that Sorensen failed to pay his employees the prevailing rates as required by sections 34–325 and 34–326, subsec. A of the Arizona Revised Statutes. At trial, Sorensen admitted that the $1,125.00 penalty resulted

solely from the fact that he had failed to pay the proper wages under the subcontract. The School Board had withheld the sum of $1,125.00 from Ewing and, pursuant to A.R.S. § 34–326, subsec. B, rightfully did so. Ewing, under these circumstances, properly withheld the same amount.[1]

■ The final contention of error, with which we agree, is directed to the inclusion of the Mayben and Walker bill in the amount of $114.80 for services rendered in September, 1965. There is nothing in the record to link this bill to a defect in Sorensen's performance so as to render him liable therefor. Accordingly, it was error to admit the bill in evidence and the sum of $114.80 should be deducted.

Since the total sum of $1,763.77 was erroneously allowed as damages, the judgment is hereby modified to $21,162.65, and as so modified is affirmed.

HATHAWAY, C. J. and MOLLOY, J., concurring.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

1. A.R.S. § 34–326, subsec. D provides:
"A contractor may withhold from any subcontractor sufficient amounts to cover penalties withheld from him by the awarding body on account of the subcon-

tractor's failure to comply with this chapter, and if payment has already been made to the subcontractor, the contractor may recover the amount of the penalty or forfeiture from him in an action at law."