311 P.3d 1062

A. MINER CONTRACTING, INC., an Arizona corporation; and Safeco Insurance Company of America, a Washington corporation, Appellants,

v.

TOHO–TOLANI COUNTY IMPROVEMENT DISTRICT, a political subdivision of the State of Arizona organized under A.R.S. § 48–901; Coconino County, a political body, Appellees.

No. 1 CA–CV 10–0665.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 19, 2013.

Polsinelli PC By David W. Lunn and Kathryn A. Smetana, Phoenix, Attorneys for Appellants.

Greenberg Traurig, LLP By E. Jeffrey Walsh, Gregory W. Seibt, and Julie R. Barton, Phoenix, Attorneys for Appellees.

## OPINION

PHILIP HALL, Judge (Retired).*

¶ 1 This case involves a construction contract dispute between A. Miner Contracting, Inc. ("Miner") and the Toho–Tolani County Improvement District and Coconino County (collectively, "the District"). In granting summary judgment to the District, the trial court found that the District's previous finding that Miner had defaulted on its contractual obligations was conclusive as to Miner's claims and defenses in its contract litigation with the District, thus barring Miner's subsequent claims against the District under the doctrine of res judicata. The trial court also awarded the District the full amount of damages it sought against Miner and Safeco Insurance Company of America ("Safeco"), Miner's performance bond surety, and awarded attorneys' fees and costs to the District. Both Miner and Safeco appealed. For the reasons explained below, we affirm the trial court's judgment as to Miner. As to Safeco, we also affirm the court's grant of summary judgment to the District on liability, but vacate the liquidated portion of the damages award as well as the attorneys' fees award entered against Safeco and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The following facts are undisputed. On November 4, 2003, Miner and the District entered into a contract ("the contract") for construction of a road and drainage improvement project ("the project"), estimated to cost $4,286,260.00. The project was to be

---

* Philip Hall was a sitting member of this court when the matter was assigned. He retired effective May 31, 2013. In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12–145, the Chief Justice of the Arizona Supreme Court has designated Judge Hall as a judge pro tempore in the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during his term in office.

completed 180 days after the District issued the Notice to Proceed on April 26, 2004. Safeco, a licensed construction surety, provided a performance bond guaranteeing Miner's performance on the project. Various disputes arose during the project, culminating in Miner's failure to finish the project by the initial completion date. To resolve these issues, Miner and the District entered into a "Settlement Agreement and Change Order No. 2" ("Change Order No. 2") on February 12, 2005. Pursuant to Change Order No. 2, Miner agreed to complete its scope of work by July 1, 2005, and the District agreed to release a portion of the withheld funds to Miner. Change Order No. 2 specifically stated that Miner's "failure to achieve substantial completion" of the work on or before July 1, 2005 "shall constitute a material breach of [c]ontract and this [a]greement." On June 8, 2005, Miner notified the District that it was "terminat[ing] the contract" due to the District's refusal to certify Miner's pay application for work performed through May 2005. On June 14, 2005, Miner filed a complaint against the District for breach of contract, unjust enrichment, tortious interference with contractual expectancies, and professional negligence.

¶3 On June 21, 2005, the Board of Directors for the District ("the Board") conducted a hearing ("the hearing") pursuant to Arizona Revised Statutes ("A.R.S.") section 48–924 (2000) to determine whether Miner was willing and able to complete the project and, if not, whether to hold Miner in default. Although Miner received notice of the hearing, it chose not to appear. Instead, its attorney submitted a letter to the District's attorney stating a list of requirements that had to be met for Miner to continue working on the project. The Board found Miner in default and made a demand on Safeco under the bond. On July 26, 2005, the District filed a complaint against Miner for breach of contract based on Miner's default.[1]

¶4 In September 2005, Safeco and the District entered into a Takeover Agreement "to expeditiously complete the Project, reserving all rights, claims and defenses against each other or any third parties for later resolution[.]" Safeco and the District agreed that Miner had been paid $2,442,784.00 under the contract, leaving a remaining contract balance of $1,843,475.82. Safeco and the District further agreed that the District would release $721,158.22 of these funds to Safeco, and that the District would withhold $1,122,317.00 as its estimate of its claimed "actual damages" resulting from Miner's default. Safeco then entered into a contract with Combs Construction Company ("Combs") to complete the project for $3,015,012.72. The project was substantially completed by June 30, 2006, as required in the Takeover Agreement.

¶5 In November 2007, Miner moved for summary judgment on the District's damages claim. Miner argued that because the remaining contract proceeds retained by the District exceeded the amount of the District's claimed damages, the District could not recover any money from Miner. The District opposed Miner's motion and cross-moved for partial summary judgment on liability on its breach of contract claim, arguing, *inter alia*, that the doctrine of res judicata precluded Miner from contesting the default determination made by the Board at the hearing.[2] The District additionally argued it was entitled to both actual damages and liquidated damages pursuant to the Maricopa Association of Governments Uniform Standard Specifications for Public Works Construction ("MAG

---

1. Eventually, five separate lawsuits were filed by the parties and consolidated in the trial court: (1) *Miner v. the District*, CV2005–009781; (2) *the District v. Miner*, CV2005–019434; (3) *Miner v. Safeco*, CV2006–007290; (4) *Safeco v. Miner*, CV2007–000895; and (5) *Safeco v. the District*, CV2008–001105.

2. The trial court had previously dismissed Miner's breach of contract claim, finding that it failed to comply with A.R.S. § 12–821.01 (2003), which requires a person or private party to file a

notice of claim against a public entity prior to filing a complaint. The court also dismissed Miner's subsequent counterclaim after determining that it had failed to file a notice of claim that complied with the requirements of A.R.S. § 11–622 (2001). Because we conclude that Miner's claims are barred by A.R.S. § 48–924(D) and (E), we need not consider its assertion that the trial court erred by dismissing its complaint and counterclaims pursuant to A.R.S. §§ 11–622 and 12–821.01.

Specs") that were incorporated into the contract by reference.

¶ 6 Judge Kristin Hoffman initially denied the District's cross-motion for summary judgment on liability, finding that "[w]ith regard to the preclusive effect of the 924 hearing, I think it's been established [ ] at that hearing that Miner would not complete the project.... I think what's left to be adjudicated is who breached first." She further stated that the District could "re-urge" the motion "when discovery is more complete." After additional documents were filed pertaining to the motions and cross-motions for summary judgment, and the case had been reassigned to Judge J. Kenneth Mangum, the District renewed its summary judgment motion for breach of contract.[3]

¶ 7 The court granted the District's motion for summary judgment against Miner and Safeco for breach of contract. It found that Miner's claims were "barred by the rule of res judicata, that is to say, A. Miner[ ], had an obligation to protect its rights at a hearing before the [Board]. Thus, the voluntary and knowing refusal of [Miner] to participate in the hearing, preclude[d] legal review except by special action, which proceeding was not followed." After extensive motion practice, the court also granted the District's motion for summary judgment on damages against Miner and Safeco.

¶ 8 The trial court awarded the District $600,000.00 in attorneys' fees and $30,281.58 in costs and non-taxable expenses against Miner and $65,000.00 in attorneys' fees and $552.61 in costs and non-taxable expenses against Safeco.

¶ 9 After the trial court entered final judgment in favor of the District pursuant to Arizona Rules of Civil Procedure (Rule) 54(b),[4] Miner and Safeco timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B)(2003).

## DISCUSSION

¶ 10 Miner argues that the trial court erred by finding that it was barred by the doctrine of res judicata from contesting its liability on the District's breach of contract claim. Both Miner and Safeco argue that the court erred by granting the District's motion for summary judgment for actual and liquidated damages and by awarding the District attorneys' fees and costs. Safeco separately argues that it had a superior right as a surety to remaining contract proceeds. We address each contention in turn.

### Standard of Review

¶ 11 We review issues of law, such as application of res judicata principles and statutory interpretation, de novo. *Stearns v. Ariz. Dep't of Revenue*, 231 Ariz. 172, 177, ¶ 24, 291 P.3d 369, 374 (App.2012) (res judicata); *Reeves v. Barlow*, 227 Ariz. 38, 41, ¶ 12, 251 P.3d 417, 420 (App.2011) (statutory interpretation). "Our goal in interpreting a statute is to give effect to legislative intent." *Reeves*, 227 Ariz. at 41, ¶ 12, 251 P.3d at 420 (quoting *Short v. Dewald*, 226 Ariz. 88, 93–94, ¶ 26, 244 P.3d 92, 97–98 (App.2010)). "Statutory language that is clear and unambiguous is normally conclusive unless clear legislative intent to the contrary exists or impossible or absurd consequences would result." *Id.* "When construing a statute, we examine its individual provisions in the context of the entire statute to achieve a consistent interpretation." *Id.* (internal quotation omitted). "Indeed, 'if statutes relate to the same subject and are thus *in pari materia,* they should be construed together ... as though they constituted one law.'" *Id.* (quoting *Pima County by City of Tucson v. Maya Constr. Co.,* 158 Ariz. 151, 155, 761 P.2d 1055, 1059 (1988)).

¶ 12 A trial court shall grant summary judgment when "there is no genuine dispute as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). In our review

---

**3.** The District acknowledged it had no claims against Safeco for breach of contract, but added it "only to ensure a consistent ruling as that ruling might apply to the District's defense of Safeco's claims against it."

**4.** CV2006–007290 and CV2007–000895, which encompass Safeco's claim for indemnification against Miner and Miner's claims against Safeco for breach, contract interference and bad faith, are still pending in the trial court.

of the trial court's grant of summary judgment, "we view the evidence in the light most favorable to the [non-moving party], and determine de novo whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Nolan v. Starlight Pines Homeowners Ass'n,* 216 Ariz. 482, 485, 167 P.3d 1277, 1280 (App. 2007) (citation omitted).

## I. Res Judicata Effect of the Hearing

¶ 13 The creation and operation of county improvement districts are governed by an extensive statutory scheme. *See* A.R.S. §§ 48–901 to –967. The board of supervisors of the county in which the district is located, here Coconino County, is deemed the board of directors of the district. A.R.S. § 48–908 (2000). The bidder to whom the district awards a contract for improvement must execute a performance bond that complies with A.R.S. § 34–222 (2011).[5] The board of directors is authorized to hold a hearing if it believes the contractor's work on the project is not "being prosecuted with diligence" pursuant to A.R.S. § 48–924(D), which provides:

> If the work is not prosecuted with diligence, the board of directors, after a hearing upon notice mailed or personally served upon the contractor [and] the contractor's surety ..., may prescribe such terms and conditions as it deems proper before permitting the contractor to continue with the work if the board of directors determines that the contractor is capable of continuing the work. *The determination of the board of directors shall be final and conclusive, and the determination may be reviewed only by a special action.* ... The board of directors may cause a reporter's transcript to be made of the hearing. Such transcript, when made and certified and filed with the clerk, shall be the official record of the hearing. Upon request by the contractor, the surety, ... or the superintendent of streets, the board of directors may issue subpoenas or subpoenas duces tecum directed to any witness desired by any party to the hearing. The subpoena shall have the same effect as subpoenas in civil actions. If the subpoena is not obeyed, the board of directors may, on a majority vote of its members, cite the disobedient party for contempt and certify such action to the superior court. The superior court shall act upon such citation in the same manner as other cases of civil contempt.

(Emphasis added.) As is further provided in relevant part by A.R.S. § 48–924(E):

> If the board of directors finds that the contractor is unable to continue with the work or to perform the work according to the contract or has not performed the work according to the contract, the board of directors shall hold the contractor in default and make demand on the surety to act in accordance with the contract and terms and conditions of the performance bond.[6]

The trial court determined that Miner's claims were barred by the doctrine of res judicata because it did not seek special action review of the Board's determination that Miner had defaulted.[7]

---

5. As relevant, A.R.S. § 34–222(A)(1) requires a contractor to furnish "[a] performance bond in an amount equal to the full contract amount conditioned upon the faithful performance of the contract in accordance with plans, specifications and conditions thereof."

6. The contract between Miner and the District included following clause:

> Pursuant to [A.R.S. § ] 48–924(D) and (E), if the work is not prosecuted with diligence, the Board of Directors may conduct a hearing, upon notice to the Contractor, his bondsman and all owners of property affected by the assessments, to determine if the Contractor is capable of continuing the work. The Board may prescribe such terms and conditions, as it deems proper before determining that the Con-

tractor is capable. If the Board determines that the Contractor is not capable of continuing the work, the Board shall hold the Contractor in default and make demand upon the performance bond.... The determination of the Board following the hearing as to the capability of the Contractor shall be final.

7. Miner contends that Judge Mangum should not have reconsidered the District's motion for partial summary judgment because Judge Hoffman had previously denied the same motion. *See Powell–Cerkoney v. TCR–Montana Ranch Joint Venture, II,* 176 Ariz. 275, 278–79, 860 P.2d 1328, 1331–32 (App.1993) ("A party seeks a 'horizontal appeal' when it requests a second trial judge to reconsider the decision of the first trial judge in the same matter, even though no new

¶ 14 We first address Miner's contention that the Board's determination is not entitled to res judicata effect as a final judgment because the Board was not acting in a judicial capacity at the hearing.

¶ 15 "[W]hen an administrative [board] has the power to hear and determine whether a certain state of facts warrants the application of a certain law, [it] is acting in a quasi-judicial manner." *Foote v. Gerber*, 85 Ariz. 366, 371, 339 P.2d 727, 730 (1959). Acting pursuant to the authority conferred on it by A.R.S. § 48–924(D), the Board scheduled a hearing regarding Miner's capability to continue the work and provided the statutorily required notice to all interested parties.[8] At the outset of the hearing, the Board's chairperson characterized its role as quasi-judicial in nature: "[W]e [are] acting in a quasi-judicial capacity. And what that means is that we [are] acting as judges, just like judges in a courtroom.... We are following very specific legal procedures that are defined in law and we must follow those procedures very directly and not deviate from those procedures." After taking evidence and hearing argument, the Board held Miner in default and made a demand on the surety to act in accordance with the performance bond. Because the hearing conducted by the Board (in its capacity as the Board of Directors for the District) was authorized pursuant to A.R.S. § 48–924(D), it was acting in its quasi-judicial capacity when it found Miner in default.[9]

¶ 16 An adjudicative determination by an administrative tribunal is entitled to the same res judicata[10] effect as a judgment of a court if it "entail[s] the essential elements of adjudication," including:

(a) Adequate notice to persons who are to be bound by the adjudication ...;

(b) The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;

(c) A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status, or a specific series thereof;

(d) A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and

(e) Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.

Restatement (Second) of Judgments § 83(2) (1982).

circumstances have arisen in the interim and no other reason justifies reconsideration.''). Because our review of the hearing issue is de novo, we decline to consider Miner's contention that Judge Mangum abused his discretion in deciding to reconsider the motion. Moreover, because Judge Mangum ruled correctly on the substance of the issue, "it would be folly to reverse on this ground[.]" *Dunlap v. City of Phoenix*, 169 Ariz. 63, 66, 817 P.2d 8, 11 (App.1990); *see also Powell–Cerkoney*, 176 Ariz. at 278, 860 P.2d at 1331 ("[W]e treat [the] law of the case as a procedural doctrine rather than as a substantive limitation on the court's power.'').

8. Miner admitted that it received notice of the hearing and chose not to attend or request an extension of time to prepare for the hearing. It now argues that the hearing should not be accorded preclusive effect on the merits of its breach of contract claims and defenses because the hearing was held only ten days after it was noticed, which left it insufficient time to prepare for a breach of contract trial. There is no statutory requirement as to when the hearing should be held, and the record does not reflect that Miner requested a continuance.

9. Miner does not argue that the applicable statutory scheme violated its due process right to a fair hearing. *Cf. Pavlik v. Chinle Unified Sch. Dist. No. 24*, 195 Ariz. 148, 151–55, ¶¶ 10–27, 985 P.2d 633, 636–40 (App.1999) (setting forth analysis for determining whether adjudicatory bias of administrative tribunal violates due process). We therefore do not consider that question here.

10. Although subject to evolving meanings, the term "res judicata" may encompass both claim preclusion and the related concept of issue preclusion. *Pettit v. Pettit*, 218 Ariz. 529, 531 n. 2, 189 P.3d 1102, 1104 n. 2 (App.2008).

¶17 A hearing conducted in accordance with the procedures outlined in A.R.S. § 48–924 entails these essential elements of adjudication. First, pursuant to A.R.S. § 48–924(D), the persons who are to be bound by the decision are provided notice of the proceeding and an opportunity to be heard. Second, a party is entitled to present evidence and legal argument in support of the party's position and rebut the evidence and argument by opposing parties. For example, under the circumstances of this case, Miner, had it appeared at the hearing, could have presented evidence that it was incapable of continuing the work because of breaches by the District. *See* A.R.S. § 48–924(D) (authorizing the board to prescribe "such terms and conditions as it deems proper before permitting the contractor to continue with the work if the board of directors determines that the contractor is capable of continuing the work"). Third, the ultimate determination at a hearing held pursuant to A.R.S. § 48–924 resolves a matter analogous to a "legal claim" in a judicial adjudication, that is, whether the contractor defaulted on its contractual obligations, thereby entitling the Board to "make demand on the surety to act in accordance with the contract and terms and conditions of the performance bond." A.R.S. § 48–924(E). Fourth, "[t]he determination of the board of directors shall be final and conclusive[.]" A.R.S. § 48–924(D); *cf. Abiele Contracting, Inc. v. New York City Sch. Constr. Auth.*, 91 N.Y.2d 1, 666 N.Y.S.2d 970, 689 N.E.2d 864, 867 (App.1997) ("A municipal agency's finding that a general contractor has defaulted on its performance under the contract will not bind the general contractor, and foreclose a plenary action, unless the agency is endowed with contractual or statutory authority to render a quasi-judicial, final and binding determination."). Fifth, additional procedural rights in the form of compulsory process and judicial review are granted to parties as part of the hearing process. A.R.S. § 48–924(D) (permitting special action review of the Board's determination).

■ ¶18 Miner nonetheless contends it has not yet had the opportunity to litigate whether the District breached the contract because the hearing was "strictly limited to determine whether a demand on the bond could be made" and therefore did not affect Miner's right to pursue "legal claims and defenses in a court of law." *See Jackson v. Dist. of Columbia*, 412 A.2d 948, 952 (D.C.App.1980) ("A party must have a day in court on an issue before being barred from litigating it."). Miner asserts that it should be allowed to litigate whether it was "excused" from performance because the District breached the contract before Miner terminated its work on the project. *See Zancanaro v. Cross*, 85 Ariz. 394, 400, 339 P.2d 746, 750 (1959) (one party's breach of a material provision in a contract excuses the other party's performance). We disagree.

¶19 Pursuant to A.R.S. § 48–924(E), the Board could not have found Miner in default without first finding that it was "unable to continue with the work or to perform the work according to the contract or has not performed the work according to the contract[.]" Thus, the Board could have found that Miner was unable to continue the work or perform the work due to the District's breach had Miner appeared and presented evidence to support such a finding.

¶20 The statutory scheme set forth in A.R.S. § 48–924 for determining whether a default has occurred is consistent with general construction suretyship law, under which a party cannot be held in default unless: (1) it has materially breached the contract; and (2) the breach is of such magnitude that it justifies the obligee in terminating the contract. *See L & A Contracting Co. v. S. Concrete Serv., Inc.*, 17 F.3d 106, 110 (5th Cir.1994); *see also* Philip L. Bruner & Patrick J. O'Connor Jr., Bruner and O'Connor on Construction Law, § 12:37 (2011) ("The surety industry traditionally has expressed the concept of material breach of contract in language of 'default.'"). Although the term "default" is not defined within Arizona's statutory scheme governing improvement districts, MAG Specs 108.10 Forfeiture and Default of Contract, incorporated as part of the parties' contract, provides that the contractor will be found in default if it "[d]iscontinues the prosecution of the work." Miner further agreed in Change Order No. 2 that its failure to substantially complete the work on the pro-

ject on or before July 1, 2005 would constitute a material breach. Therefore, the Board's determination that Miner was in default for failure to prosecute the project with diligence amounted to a determination that it materially breached the contract by terminating its work on the unfinished project.

¶ 21 To summarize, had Miner appeared at the hearing, it could have contested the District's claim of breach by offering evidence that the District first materially breached the contract by refusing to release payments to which Miner was entitled. *See Zancanaro,* 85 Ariz. at 400, 339 P.2d at 750. Because Miner failed to contest the issue of default, it is precluded from now re-litigating the same issue under the guise of breach. *See Pettit,* 218 Ariz. at 533, ¶ 10, 189 P.3d at 1106. Finally, the circumstance that Miner chose not to appear at the hearing is irrelevant to the application of res judicata principles. "A default judgment has the same res judicata effect as a judgment on the merits where the issues were litigated." *Norriega v. Machado,* 179 Ariz. 348, 353, 878 P.2d 1386, 1391 (App.1994) (emphasis omitted).

¶ 22 The Board's decision is therefore entitled to preclusive effect and is final and binding on the parties. Accordingly, we affirm the trial court's conclusion that Miner's claims against the District were barred by the doctrine of res judicata.

## II. Damages
### Award of Both Actual and Liquidated Damages

¶ 23 Miner and Safeco assert that the trial court erred as a matter of law in awarding the District both its claimed actual damages and liquidated delay damages. They cite *Roy H. Long Realty Co. v. Vanderkolk,* 26 Ariz.App. 226, 228, 547 P.2d 497, 499 (1976), and *Larson–Hegstrom & Assoc., Inc. v. Jeffries,* 145 Ariz. 329, 333, 701 P.2d 587, 591 (App.1985), as support for their claim that "when a contract contains a provision for liquidated damages, the non breaching party cannot recover both the liquidated and actual damages." Their reliance on these cases is misplaced. In *Roy H. Long Realty Co.,* we determined that a liquidated damages provision in a land sales contract was enforceable

by the seller based on a negligent misrepresentation by the seller's agent that the prospective buyers had made the requisite earnest money deposit. 26 Ariz.App. at 227–29, 547 P.2d at 498–500. In *Larson–Hegstrom,* we upheld a liquidated damages provision contained in an exclusive listing agreement against the claim that it was an unenforceable penalty. 145 Ariz. at 333–34, 701 P.2d at 591–92. Neither of these cases, nor any of the other cases cited by Miner or Safeco, held a party could not receive both liquidated and actual damages.

¶ 24 Here, the MAG Specs provide for both liquidated and actual damages. MAG Specs section 108.9 on liquidated damages for failure to complete on time provides:

> For each and every calendar day that work shall remain incompleted [sic] after the time specified for the completion of the work in the proposal, or as adjusted by the Engineer, the sum per calendar day shown in table 108–1, unless otherwise specified in the proposal form, may be deducted from monies due to or to become due to the Contractor, not as a forfeit or penalty but as liquidated damages. This sum is fixed and agreed upon between the parties because the actual loss to the Contracting Agency and to the public caused by delay in completion will be impractical and extremely difficult to ascertain and determine.

The daily amount of liquidated damages as listed in table 108–1 is $1,070.00. The MAG Specs also provide for actual damages. MAG Specs provision 108.10 states,

> All costs and charges incurred by the Contracting Agency, together with the cost of completing the work under the contract, will be deducted from any monies due or which may become due to said Contractor if such expense exceeds the sum which would have been payable under the contract, then the Contractor and the surety shall be liable and shall pay to the Contracting Agency the amount of such excess.

Thus, unlike the contracts in *Roy H. Long Realty Co.* and *Larson–Hegstrom,* the contract between Miner and the District ex-

pressly provides for both liquidated and actual damages.

¶ 25 In its reply brief, Miner, shifting the focus of its argument, claims that the actual damages awarded to the District duplicated the liquidated damages because they both arose as the result in delay of completion of the project. We agree that a party may not receive actual and liquidated damages for the same injury; however, actual damages related to the cost of completion are separate and distinct from liquidated damages intended to compensate for injury resulting from delay. *See, e.g., Lawson v. Durant,* 213 Kan. 772, 518 P.2d 549, 551 (1974) (holding liquidated damages provision in contract did not prevent recovery of actual damages for other items to which liquidation provision does not apply unless contract expressly provides that damages other than those enumerated shall not be recovered); *Twin River Constr. Co. v. Public Water Dist. No. 6,* 653 S.W.2d 682, 694 (Mo.App.1983) (permitting both liquidated and actual damages as set-offs per the terms of the construction contract); *Spinella v. B–Neva, Inc.,* 94 Nev. 373, 580 P.2d 945, 946–47 (1978) (determining liquidated damages clause in construction contract did not preclude recovery of actual damages resulting from contractor's defective workmanship); *Oregon State Highway Comm'n v. DeLong Corp.,* 9 Or.App. 550, 495 P.2d 1215, 1219, 1226, 1229 (1972) (awarding liquidated and general damages against contractor and surety on bridge construction contract).

¶ 26 The District submitted affidavits from Lucinda Andreani, Director of Special Initiatives, and Eslir Musta, Special Districts Assistant, in which they avowed that the District's actual damages were $451,517.00 in out-of-pocket costs (engineering, construction administration, maintenance, payments to third parties). Musta's affidavit incorporated a spreadsheet detailing the District's additional expenses incurred to complete the work left unfinished by Miner. Andreani also avowed that the District incurred additional actual damages of $166,276.00 in legal fees. Given that the contract unambiguously provided for both actual and liquidated damages in the event of default by Miner, and

because the actual damages were separate and distinct from the delay damages, we reject Miner's claim that the District received a double recovery.

### Liquidated Damages

¶ 27 Miner and Safeco also contend that the District waived its right to liquidated damages pursuant to the Takeover Agreement. Paragraph 2 of the Takeover Agreement, in relevant part, provides:

> The District waives its claims for liquidated damages under the Contract, if any, against Safeco, so long as Safeco performs its obligations under this Agreement. However, the District reserves the right to assert its claims for liquidated damages as a setoff or recoupment against any damage claim asserted against the District by Safeco or its assignee. The District's waiver of liquidated damages does not inure to the benefit of Miner or any other party.

The Takeover Agreement also reads at paragraph 13 that:

> Notwithstanding anything provided for elsewhere in this Agreement, the District fully preserves, and does not waive, any claim it may now or hereafter have for actual damages and attorneys' fees and costs, except that, should Safeco perform its obligations in full in accordance with this Agreement, the District will not pursue claims for bad faith breach or for liquidated damages.

¶ 28 Because it is undisputed that Safeco performed its obligations under the Takeover Agreement, Safeco asserts that the District waived any right to retain liquidated damages from the contract balance fund of $1,843,475.82. The District, on the other hand, argues that the Takeover Agreement merely barred it from filing a separate claim against Safeco for liquidated damages but preserved its right to "backcharge" Miner for liquidated damages and to assert claims for liquidated damages against Safeco in the event Safeco asserted a damage claim against the District. Safeco replies that it "is not bringing any claim for 'damages.'" Rather, it is "seek[ing] solely to enforce the contract in the sense the District agreed to pay Safeco the remaining contract balance

for completing the original scope of construction." [11]

¶ 29 Although Safeco and Miner argue that the waiver language in the first sentence of paragraph 2 is determinative, we interpret it in light of the qualifying language in the following sentence and paragraph 13 so as to give meaning to the parties' entire agreement regarding liquidated damages. *See Weatherguard Roofing Co. v. D.R. Ward Constr. Co.*, 214 Ariz. 344, 350, 152 P.3d 1227, ¶ 27, 152 P.3d 1227, 1233 (App.2007); *LeBaron v. Crismon*, 100 Ariz. 206, 209, 412 P.2d 705, 707 (1966) ("It is the duty of the court to adopt a reasonable interpretation of a contract which will harmonize all of its provisions and any conflicting provisions on the face of the instrument must be reconciled if possible to meet the purposes for which the contract was intended."). Otherwise, pursuant to the waiver language, the District relinquished its right to seek liquidated damages from Safeco even if Miner was unable to pay any liquidated damages.

¶ 30 Neither party's interpretation of the contract language is unreasonable. Viewed as a whole, the Takeover Agreement may be interpreted as supporting either party's argument. The District clearly intended to waive some right it might otherwise have had to pursue liquidated damages, but it is equally clear that the Agreement preserved the District's right to pursue liquidated damages as a setoff or *recoupment against any* claim by Safeco for damages. Similarly, it is unclear whether whatever right of recovery was being waived also applied to the contract funds then being retained by the District as referenced elsewhere in the Agreement.

¶ 31 Because the contract language is susceptible to both interpretations, an ambiguity exists regarding the parties' intent that creates a fact question incapable of determination as a matter of law. *See United California Bank v. Prudential Ins. Co. of America*, 140 Ariz. 238, 260, 681 P.2d 390, 412 (App.1983) ("[A]ny ambiguity in the documents is subject to a factual determination concerning the intent of the parties and is to be resolved conclusively by the trier of fact[.]"). Accordingly, the trial court erred in determining as a matter of law that the District had not waived its right to seek liquidated damages from Safeco.

¶ 32 Miner and Safeco further argue that the District cannot recover liquidated delay damages because the District had Combs perform additional work not provided for in the original contract. Although the District concedes that Combs performed additional work, it argues, and we agree, that no evidence was presented that Combs required more time to perform such work.

¶ 33 Miner also maintains that the trial court should have precluded the award of liquidated damages on summary judgment against it because there were questions of fact as to whether the District caused delays in early 2005 that excused Miner's non-performance. As already discussed in ¶¶ 13–22 *supra*, the issue of breach was resolved against Miner at the hearing. Because the delay damages are entirely attributable to the time it took to complete the project after Miner defaulted, the trial court correctly held Miner liable for the liquidated damages.

### Actual Damages

¶ 34 Miner and Safeco next maintain that the District failed to substantiate its claim for actual damages or provide sufficient evi-

---

11. Citing *Tri–State Insurance Co. v. Maxwell*, 104 Ariz. 574, 457 P.2d 251 (1969), and *Sorensen v. Ewing*, 8 Ariz.App. 540, 542, 448 P.2d 110, 112 (1968), Miner argues the District's waiver of liquidated damages also extends to it and, further, even though the District in the Takeover Agreement stated its waiver of such damages did not "inure" to Miner, the District could not "contract away" Miner's rights. Miner's reliance on *Tri–State* and *Sorensen* is misplaced. These cases stand for the proposition that a surety, standing in the shoes of a principal, is liable to perform when the principal fails to do so, *Sorensen*, 8 Ariz.App. at 542, 448 P.2d at 112, and may invoke all defenses available to the principal, *Tri–State*, 104 Ariz. at 578, 457 P.2d at 255. The cases also hold that a "surety's liability is co-extensive with that of its principal[.]" *Tri–State*, 104 Ariz. at 578, 457 P.2d at 255; *Sorensen*, 8 Ariz.App. at 542, 448 P.2d at 112. Neither case, however, involved circumstances analogous to those here, in which the surety has separately entered a performance contract establishing the scope of its obligations. Therefore, we reject Miner's argument because *Tri–State* and *Sorensen* are readily distinguishable.

dence to obtain actual damages. They further contend that the District did not provide a breakdown of the out-of-pocket costs, and the trial court therefore abused its discretion in granting summary judgment on damages. We disagree. Although the District did submit a general list of itemized damages, it also subsequently submitted a detailed list and explanation of its actual damages. The information provided by the District adequately substantiated its claim for actual damages.

¶ 35 Miner also argues that its motion for summary judgment regarding damages should have been granted because the District's claimed damages were less than the funds the District kept and therefore no additional damages were recoverable. We disagree. Although the District retained its anticipated damages prior to the court granting its motion for summary judgment, the District would not have been able to keep these funds if it had not succeeded on its claims. After the District determined that it withheld additional funds that exceeded its damages, it gave the remaining balance to Safeco. Thus, the District ultimately retained only the actual and liquidated damages to which it was entitled, except for the liquidated damages awarded against Safeco for which a factual issue remains. Accordingly, the trial court's decision that the District could retain the money it had been temporarily withholding as damages was a determination that favored the District, not Miner.

## III. Safeco's Right to Remaining Contract Proceeds

¶ 36 Relying on what it characterizes as "fundamental principles of surety law[,]"

Safeco initially asserts that the District was first required to satisfy any judgment against Miner's assets before seeking payment of its full damages from the contract proceeds otherwise payable to Safeco. As legal support for this assertion, Safeco cites A.R.S. § 12–1642(B) (2003), which, in relevant part, provides "the court shall order the sheriff to levy the execution first upon the property of the principal which is subject to execution and situate in the county in which the judgment was rendered before a levy is made upon the property of the surety[.]" According to Safeco, this statute rendered Safeco (the surety) only secondarily liable on its performance bond and required the District (the obligee) to exhaust the assets of Miner (the principal) before proceeding against Safeco.

¶ 37 Safeco's reliance on A.R.S. § 12–1642 is misplaced.[12] The performance bond here was statutorily required pursuant to Arizona's Little Miller Act, A.R.S. § 34–221, *et seq.*, which requires a contractor on a public works project to furnish "[a] performance bond in an amount equal to the full contract amount conditioned upon the faithful performance of the contract in accordance with the plans, specifications and conditions thereof." A.R.S. § 34–222(A)(1). Miner and Safeco furnished the requisite performance bond in the amount of $4,286,260.00 binding the "Principal and Surety ... jointly and severally" for payment thereof. Whatever may be said regarding the application of A.R.S. § 12–1642 in the context of agreements not falling within the purview of the Little Miller Act, it did not require the District to levy upon the assets of Miner before obtaining a judgment against Safeco.[13]

---

12. Safeco combines its reliance on A.R.S. § 12–1642 with an assertion that the District committed "procedural error" by improperly seeking relief only from Safeco. *See* Ariz. R. Civ. P. 17(f) (requiring that the principal obligor be joined in any action against a surety). The District did not initiate an action against Safeco; Rule 17(f) therefore did not prevent the District from contesting Safeco's claim for relief against the District. In any event, all the related lawsuits were eventually consolidated, *see supra*, ¶ 3, n. 1, satisfying Rule 17(f)'s underlying purpose. *See SCA Constr. Supply v. Aetna Cas. & Sur. Co.,* 157 Ariz. 64, 65, 754 P.2d 1339, 1340 (1988) (explaining "[t]he purpose of the rule is to enable the courts

to determine the rights of all parties to a controversy in one lawsuit, if possible") (citation and quotation omitted).

13. As to contracts not subject to the requirements of the Little Miller Act, A.R.S. § 12–1642, the predecessor to which first appeared in the Territorial Civil Code §§ 3553–54 (1901), codifies the common-law rule applicable to sureties and guaranties, which required the obligee to exhaust the resources of the principal obligor before seizing the assets of the secondary obligor. The common-law rule traces its origins to Article 9 of the Magna Carta:

¶ 38 Safeco also contends it had a superior right as a surety to the remaining contract proceeds withheld by the District. We disagree. Safeco agreed to be jointly and severally liable with Miner for all "terms, conditions and agreements of the contract[.]" Second, and more importantly, A.R.S. § 34–222(A)(1), as mentioned in the preceding paragraph, provides that the bond shall be "conditioned upon the faithful performance of the contract in accordance with plans, specifications and conditions thereof." *See Hartford Accident & Indem. Co. v. Ariz. Dep't of Transp.*, 172 Ariz. 564, 838 P.2d 1325 (App. 1992) (holding that A.R.S. § 34–222(A)(1) entitled ADOT to offset unpaid unemployment insurance taxes against the retained contract balances). Pursuant to the contract (incorporating the MAG Specs), Miner was liable for both liquidated and actual damages. *See* ¶¶ 23–26, *supra*. Subject to the determination on remand whether the District waived its right to liquidated damages as against Safeco, Safeco had no superior right to the retained funds because it was statutorily obligated to faithfully perform *all* the contract's conditions, and not just complete the construction work. *Hartford Accident & Indem. Co.*, 172 Ariz. at 569, 838 P.2d at 1330.

¶ 39 The remaining contract proceeds withheld by the District consisted of both actual and liquidated damages. Therefore, given our determination that the question whether the District waived its right to liquidated damages and, if so, to what extent, must be submitted to the fact-finder, the trial court correctly denied Safeco's motion for summary judgment against the District for damages.

## IV. Attorneys' Fees

¶ 40 Miner and Safeco argue that the trial court awarded the District an unrea-sonable amount of attorneys' fees. Miner and the District agreed, pursuant to the contract (as modified by the change order) and Change Order No. 2, respectively, that "[t]he prevailing party in any action arising out of the agreement shall be entitled to an award of its reasonable attorneys' fees, expenses, expert witness expenses and legal costs." When a contract includes an attorneys' fees provision, fees are awarded "in accordance with the terms of the contract" and the trial court "lacks discretion to refuse to award fees under the contractual provision." *Heritage Heights Home Owners Ass'n v. Esser*, 115 Ariz. 330, 333, 565 P.2d 207, 210 (App. 1977); *Chase Bank of Ariz. v. Acosta*, 179 Ariz. 563, 575, 880 P.2d 1109, 1121 (App. 1994). Once a party establishes its entitlement to attorneys' fees, it is the burden of the party opposing the fees to show that an unreasonable amount of fees was requested. *Cf. Nolan*, 216 Ariz. at 490–91, ¶ 38, 167 P.3d at 1285–86. Finally, an award of attorneys' fees is left to the sound discretion of the trial court and we will not overturn such an award unless the trial court abused its discretion. *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18, 99 P.3d 1030, 1035 (App.2004).

¶ 41 The District requested an attorneys' fees award of $743,835.50 against Miner and $77,578.50 against Safeco. Safeco objected to the award on various grounds in the trial court including that it, and not the District, was the prevailing party given that the District eventually released to Safeco $116,044.00 from the contract balance it had initially retained pursuant to the Settlement Agreement, and that the District's calculation of its fees was incorrect due to billing rate errors and improper entries. Miner objected to the amount requested based on its expert's analysis of the District's billing sub-

---

[N]or shall the debtor's sureties be distrained so long as the debtor is able to pay the debt. If the debtor fails to pay, not having the means to pay, then the sureties shall answer the debt, and, if they desire, they shall hold the debtor's lands and rents until they have received satisfaction of the debt which they have paid for him, unless the debtor can show that he has discharged his obligation to them.

Frank Bae & Marian McGrath, *The Rights of a Surety (or Secondary Obligor) Under the Restatement of the Law, Third, Suretyship and Guaranty*, 122 Banking L.J. (September 2005). The Restatement (Third) of Suretyship and Guaranty § 15(c) (1996) reflects the modern view that a guarantor is generally not required to satisfy the obligee's claim unless payment cannot be obtained from the principal obligor but that a surety is "jointly and severally liable with the principal obligor to perform the obligation set forth in that contract." The "jointly and severally" language of the performance bond furnished by Miner and Safeco tracks the distinction in the Restatement between guarantors and sureties.

missions, which it opined were excessive based on the number of hours billed. Instead, the expert recommended that a fair and reasonable fee assessment was $500,000.00. The trial court reduced the District's requested fees due to "excessive time in billing and mistakes" and awarded the District $600,000.00 in attorneys' fees and $30,281.58 in costs and non-taxable expenses against Miner and $65,000.00 in attorneys' fees and $552.61 in costs and non-taxable expenses against Safeco.

¶ 42 Because we are remanding the issue of liquidated damages as to Safeco, we set aside the award of $65,000 in attorneys' fees against it. The trial court may recalculate the award following a final determination on the merits.

¶ 43 Miner argues that the trial court's award of $600,000 in attorneys' fees was excessive; however, it fails to identify with any particularity what evidence supports a further reduction in fees beyond the reduction already granted by the trial court. Accordingly, we conclude that the court did not abuse its discretion in fixing the amount of attorneys' fees it awarded the District against Miner.

## V. Attorneys' Fees and Costs on Appeal

¶ 44 The District requests its fees and costs on appeal pursuant to the terms of the contract, A.R.S. §§ 12–341.01, –341, and –349 (2003), and Arizona Rule of Civil Appellate Procedure (ARCAP) 21. The District has prevailed on appeal against Miner. Accordingly, pursuant to the terms of the contract, we grant the District its reasonable fees and costs on appeal incurred as to Miner upon the District's compliance with ARCAP 21.

¶ 45 As between the District and Safeco, because neither party completely prevailed on appeal, we make no award at this time. Following a final determination of the merits on remand, the trial court is authorized to consider an award for fees incurred during this appeal. *See Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 204, ¶ 37, 165 P.3d 173, 182 (App. 2007) (deferring party's request for attorneys' fees on appeal "to the trial court's discretion pending resolution of the matter on the merits").

## CONCLUSION

¶ 46 For the foregoing reasons, we affirm the judgment in its entirety as against Miner. We also affirm the trial court's grant of summary judgment in favor of the District as to Safeco's liability. We vacate, however, the liquidated portion of the damages award as well as the attorneys' fees award entered against Safeco and remand for further proceedings regarding the District's entitlement to such damages and fees.

CONCURRING: MICHAEL J. BROWN, Presiding Judge and PATRICIA K. NORRIS, Judge.