NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STEVE SCHOENBERG, *Plaintiff/Appellant/Cross-Appellee,*

*v.*

RM AUCTIONS, INC., a Delaware corporation doing business as RM
CLASSIC CARS; RM AUCTION ARIZONA, INC., an Arizona
corporation; AUCTION AMERICA BY RM, a foreign corporation; ROB
MYERS and CATHY MYERS, husband and wife; DONNIE and RENEE
GOULD, husband and wife, *Defendants/Appellees/Cross-Appellants.*

No. 1 CA-CV 13-0419
FILED 07-08-2014

---

Appeal from the Superior Court in Maricopa County
No.  CV2011-070357
The Honorable Michael D. Gordon, Judge

**AFFIRMED; REMANDED IN PART**

---

COUNSEL

Law Office of Donald Smith, PLLC, Glendale
By Donald H. Smith
*Counsel for Plaintiff/Appellant/Cross-Appellee*

Lewis Roca Rothgerber, LLP, Phoenix
By Brian Pollock
*Counsel for Defendants/Appellees/Cross-Appellants*

―――――――――――――――――

## MEMORANDUM DECISION

Chief Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Peter B. Swann joined.

―――――――――――――――――

J O H N S E N, Judge:

¶1          Steve Schoenberg purchased a vintage car at an auction and, after it broke down, filed suit against RM Auctions, Inc., RM Auction Arizona, Inc., Auction America by RM, Rob and Cathy Myers, and Donnie and Renee Gould (collectively, "RM"). The superior court granted summary judgment in favor of RM. We affirm the summary judgment but, on RM's cross-appeal, reverse and remand the order on attorney's fees.

## FACTS AND PROCEDURAL HISTORY

¶2          As a condition of bidding at the auction, Schoenberg signed a Buyer's Agreement with RM that provided:

> Statements printed in catalog brochures, signs, and window cards, and verbal statements made by auctioneers or auction staff are representations made by [the seller of the vehicle] and RMA has no obligation to verify or authenticate any such claims or representations.

¶3          The auction catalog described a particular 1965 Jaguar "E-type" coupe as follows:

> An absolutely fresh restoration on a solid original E-type coupe, this car is stunning in Opalescent Burgundy. Purchased by the current owner several years ago, it was a numbers-matching California black plate car. Recent work has included a full engine rebuild, upgraded with a big valve head from a 1983 XJ-6. The original head is included in the sale. All mechanical systems, including front and rear suspension, have been completely rebuilt. The interior has been thoroughly redone in tan leather.

According to the undisputed evidence Schoenberg offered on summary judgment, RM representatives "reiterated" to Schoenberg what the auction

catalog said about the vehicle. Schoenberg purchased the car for $107,250 and executed a purchase agreement with Collectible Machine Trading, the car's seller.

¶4 After the vehicle broke down, Schoenberg discovered it did not have matching numbers and was not fully restored. He filed suit alleging breach of contract, negligent misrepresentation, intentional misrepresentation and fraud.

¶5 In due course RM moved for summary judgment, arguing that *Castle v. Barrett-Jackson Auction Co., LLC*, 229 Ariz. 471, 472-73, ¶¶ 10-12, 276 P.3d 540, 542-43 (App. 2012), barred Schoenberg's claims as a matter of law. The superior court agreed and granted RM's motion for summary judgment. RM then filed an application for attorney's fees pursuant to the Buyer's Agreement and Arizona Revised Statutes ("A.R.S.") section 12-341.01(A) (2014).[1] The superior court awarded RM fees of $35,000, citing A.R.S. § 12-341.01(A).

¶6 We have jurisdiction over Schoenberg's timely appeal and RM's cross-appeal pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120(A) (2014), -2101(A)(1) (2014).

## DISCUSSION
### A.    Standard of Review.

¶7 We review the entry of summary judgment *de novo* and view the facts and inferences in the record in the light most favorable to the non-moving party. *Lennar Corp. v. Transamerica Ins. Co.*, 227 Ariz. 238, 242, ¶ 7, 256 P.3d 635, 639 (App. 2011). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *Tilley v. Delci*, 220 Ariz. 233, 236-37, ¶ 10, 204 P.3d 1082, 1085-86 (App. 2009).

### B.    Breach of Contract.

¶8 Schoenberg alleged RM breached the purchase contract by failing to deliver the vehicle as advertised. But RM was not a party to the

---

[1]    Absent material revision after the relevant date, we cite a statute's current version.

purchase agreement – that contract was between Schoenberg and the seller of the Jaguar. Schoenberg argues RM may be liable as the seller's agent. That is incorrect: "One who signs an agreement as the agent of a fully disclosed principal is not a party to that agreement and thus incurs no personal liability for the principal's breach of that agreement." *Farrarell v. Robinson*, 11 Ariz. App. 473, 475, 465 P.2d 610, 612 (1970); *see also Estate of Decamacho ex rel. Guthrie v. La Solana Care and Rehab, Inc.*, 234 Ariz. 18, 22, ¶ 13, 316 P.3d 607, 611 (App. 2014) (same).

**C.      Negligent Misrepresentation, Intentional Misrepresentation and Fraud.**

**¶9**      Claims for fraud, negligent misrepresentation and intentional misrepresentation require the plaintiff to prove, among other elements, that the defendant provided false information to the plaintiff. *See Haisch v. Allstate Ins. Co.*, 197 Ariz. 606, 610, ¶ 14, 5 P.3d 940, 944 (App. 2000) (fraud or intentional misrepresentation requires proof "that the defendant made a false, material misrepresentation that he knew was false or was ignorant of its truth"); *Kuehn v. Stanley*, 208 Ariz. 124, 127, ¶ 9, 91 P.3d 346, 349 (App. 2004) (negligent misrepresentation requires proof defendant provided false information to plaintiff and failed to exercise reasonable care in communicating the information).

**¶10**      In *Castle*, the plaintiff sued an auction company under the Arizona Consumer Fraud Act, A.R.S. §§ 44-1521 to -1534 (2014), alleging the auction catalog and other materials falsely described a vehicle the plaintiff purchased. 229 Ariz. at 473, ¶ 10, 276 P.3d at 542. This court affirmed summary judgment in favor of the auction company because the documents on which the plaintiff's claim was based, including the vehicle's "Car Card" and the auction program, made clear that the representations at issue were made by the seller, not the auctioneer. *Id.* at 473-74, ¶¶ 10-11, 276 P.3d at 542-43. Further, the documents explicitly provided that the auction company did not independently verify any information provided by the seller and encouraged the buyer to "conduct any inspections and examination necessary to satisfy himself of all material facts before making any bid." *Id.* at 473, ¶ 11, 276 P.3d at 542 (internal quotations omitted).

**¶11**      The plaintiff in *Castle* argued that the contract language did not relieve the auction company of liability because "a party may not contractually free itself of liability for its own fraud." *Id.* at 474, ¶ 12, 276 P.3d at 543. This court rejected that argument because the contract did "not purport to relieve [the auctioneer] of liability for its own fraud but

rather evidence[d] [the plaintiff's] agreement that [the auctioneer] did not make any representations concerning the Vehicle." *Id*. Because, by agreement, all information regarding the vehicle came from the seller, the plaintiff's claim against the auction company was barred as a matter of law. *Id*.

¶12　　　　The Buyer's Agreement that Schoenberg signed has the same effect; Schoenberg agreed that any statements made by RM were representations by the seller, not by RM. Schoenberg, however, argues *Castle* does not control because his claims are not based only on representations in the auction catalog but also are based on representations RM employees made directly to him (he alleges RM "reiterated" the statements in the auction catalog about the car). The Buyer's Agreement, however, applies to all statements by RM, and does not distinguish statements made in writing from statements made orally.

¶13　　　　Schoenberg also argues that unlike the defendants in *Castle*, RM represented that it could be relied upon for information about the quality and value of the vehicles in the auction because it purportedly agreed to make an effort to independently verify information from the seller. In support, Schoenberg points to language in the auction catalog, but read in context, the language he cites does not support his assertion. It provides:

> Although every effort is made to ensure the accuracy of the information contained in this catalog, such information is provided by the seller and may not be verified by RM Auctions, Inc. prior to sale time. . . . Buyers are advised to rely upon their own inspections as all sales are made on an "as is, where is basis." RM Auctions, Inc. accepts no responsibility for the condition of any items offered.

Thus, contrary to Schoenberg's contention, RM did not promise to verify the information it obtained from the seller – indeed, it explicitly stated that information in the catalog "may not be verified by RM" and advised buyers "to rely upon their own inspections."

¶14　　　　Schoenberg also points out that RM's website states: "We strongly encourage those interested in particular lots (vehicles) to Contact Us before the sale to obtain an objective, fair and honest condition report on any cars you may have interest in bidding on." He does not allege, however, that he asked for "an objective, fair and honest condition report," nor does he argue that RM provided such a report to him.

¶15 Finally, Schoenberg argues the Buyer's Agreement is an unenforceable contract of adhesion. "An adhesion contract is typically a standardized form offered to consumers of goods and services on essentially a take it or leave it basis without affording the consumer a realistic opportunity to bargain . . . ." *Broemmer v. Abortion Servs. of Phoenix, Ltd.*, 173 Ariz. 148, 150, 840 P.2d 1013, 1015 (1992) (internal quotation marks omitted). We presume that the Buyer's Agreement was a contract of adhesion because RM would not allow Schoenberg to bid in the auction unless he signed it without modification. But that by itself would not render the contract unenforceable.

¶16 In general, a contract of adhesion is fully enforceable unless the contract or its terms exceed a party's reasonable expectations or is otherwise unconscionable. *Banner Health v. Med. Sav. Ins. Co.*, 216 Ariz. 146, 158, ¶ 50, 163 P.3d 1096, 1108 (App. 2007). Schoenberg argues he "could reasonably expect . . . that he was not releasing [RM] from responsibility for their actions by signing the agreement to gain admission to the [auction]."

¶17 "A term may be deemed to exceed the party's reasonable expectation when the party enforcing the term has reason to believe the party against whom the agreement is enforced would not have accepted the agreement had he or she known the agreement contained that term." *Id*. at ¶ 51, 163 P.3d at 1108. In determining whether a party had reason to believe the other would not have accepted the contract or a term, "courts may examine factors including: whether the term is bizarre or oppressive, whether the term eviscerates non-standard terms specifically agreed to, whether the term eliminates the dominant purpose of the contract" and "whether the other party had an opportunity to read the term." *Id*. In this case, Schoenberg offered no evidence suggesting that RM knew he would not have executed the Buyer's Agreement had he known he was agreeing that all representations about the auction's vehicles were made by the seller and not RM. Further, the term is not "bizarre or oppressive," Schoenberg had an opportunity to read the contract and the term does not "eviscerate[] non-standard terms specifically agreed to" or eliminate the purpose of the contract. *See id*.

¶18 Schoenberg also argues that it is "unconscionable to allow a party, by means of a form contract, to make representations that they know are false and then disclaim liability for their actions." Further, he argues the Buyer's Agreement is an invalid waiver of future claims. *Castle* rejected these same arguments by the buyer in that case. 229 Ariz. at 474, ¶ 12, 276 P.3d at 543. The Buyer's Agreement did not act to relieve RM of

liability for its own fraud; rather, it evidenced an agreement between RM and Schoenberg that RM did not make any representations regarding the vehicle. *See id.*

¶19        In sum, we conclude the superior court did not err in granting summary judgment in favor of RM on all of Schoenberg's claims.

**D.        Attorney's Fees.**

¶20        We review an attorney's fee award under A.R.S. § 12-341.01(A) for an abuse of discretion. *See State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 261, ¶ 27, 963 P.2d 334, 340 (App. 1998). If there is any reasonable basis for the superior court's award, this court will not disturb it. *Fulton Homes Corp. v. BBP Concrete*, 214 Ariz. 566, 569, ¶ 9, 155 P.3d 1090, 1093 (App. 2007). We review *de novo* a party's entitlement to attorney's fees under a contractual provision. *See Camelback Plaza Dev., L.C. v. Hard Rock Café Int'l (Phoenix), Inc.*, 200 Ariz. 206, 208, ¶ 4, 25 P.3d 8, 10 (App. 2001).

**1.        Schoenberg's appeal from the fee award to RM.**

¶21        Schoenberg argues the superior court erred in awarding RM attorney's fees under A.R.S. § 12-341.01(A), which provides: "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees."

¶22        Schoenberg argues there was no contract that would allow an award of attorney's fees because the basis of his contract claim, as we have held, was a sales agreement to which RM was not a party. It is settled, however, that "a party is entitled to an award of its attorney's fees under § 12-341.01 if the plaintiff is not entitled to recover on the contract on which the action is based, or if the court finds that the contract on which the action is based does not exist." *Berthot v. Sec. Pac. Bank of Ariz.*, 170 Ariz. 318, 324, 823 P.2d 1326, 1332 (App. 1991) (listing cases) (superseded on other grounds); *see also Ambruster v. WageWorks, Inc.*, 953 F. Supp. 2d 1072, 1078 n.9 (D. Ariz. 2013) (courts may award fees under § 12-341.01 if defendant proves absence of contractual relationship). Moreover, there is no requirement that the contract at issue contain a provision for attorney's fees. *See A.R.S. § 12-341.01.*

¶23        Schoenberg next contends that even if attorney's fees may be awarded pursuant to § 12-341.01(A), the amount of time RM's attorneys billed was unreasonable. It is the burden of the party opposing an award of attorney's fees to prove that the fees requested are unreasonable. *A.*

*Miner Contracting, Inc. v. Toho-Tolani Cnty. Improvement Dist.*, 233 Ariz. 249, 261, ¶ 40, 311 P.3d 1062, 1074 (App. 2013). A party challenging the reasonableness of a fees request "does not meet [its] burden merely by asserting broad challenges to the application." *State ex rel. Corbin v. Tocco*, 173 Ariz. 587, 594, 845 P.2d 513, 520 (App. 1992).

**¶24** Here, Schoenberg fails to argue why the amount of time RM's lawyers spent on the case was unreasonable – he simply points to the hours spent by RM on its various motions and briefings. Without more, he failed to meet his burden to show that the superior court abused its discretion by awarding too much in fees to RM. *See Fulton Homes*, 214 Ariz. at 569, ¶ 9, 155 P.3d at 1093.

### 2. RM's cross-appeal.

**¶25** RM filed a request for $73,264.10 in fees; the superior court awarded it $35,000. In its cross-appeal, RM argues the superior court erred under the Buyer's Agreement by failing to award it the fees it incurred defending Schoenberg's misrepresentation claims. The Buyer's Agreement provides: "In the event either party brings action against the other from or relating to this bid card or any auction held in connection herewith, the prevailing party [, as] determined by the court, shall be entitled to recover its reasonable attorneys' fees and costs."

**¶26** Schoenberg argues the Buyer's Agreement is not enforceable against him because it lacks consideration. Consideration includes any benefit to the promisor and any detriment to the promisee. *See Realty Assocs. of Sedona v. Valley Nat'l Bank*, 153 Ariz. 514, 517-18, 738 P.2d 1121, 1124-25 (App. 1986). The Buyer's Agreement does not lack consideration – Schoenberg signed the agreement as a condition of becoming a bidder at the auction and by virtue of the agreement received the benefit of participating in the auction.

**¶27** When a contract includes an attorney's fees provision, the superior court "lacks discretion to refuse to award fees under the contractual provision" and must award fees "in accordance with the terms of the contract." *A. Miner Contracting, Inc.*, 233 Ariz. at 261, ¶ 40, 311 P.3d at 1074 (internal quotations omitted). Schoenberg's complaint (the claims for fraud and misrepresentation, as well as the claim for breach of contract) constituted an "action . . . relating to" the "auction" within the meaning of the Buyer's Agreement; accordingly, under the agreement, RM, as the prevailing party, "shall be entitled to recover its reasonable attorney's fees."

**¶28** The superior court granted RM roughly half the fees it sought. Although the court referenced A.R.S. § 12-341.01(A) in its order, it did not refer to the fees provision in the Buyer's Agreement. Accordingly, we are unable to discern from the record whether the fee award is the product of the court's calculation of reasonable attorney's fees under both A.R.S. § 12-341.01(A) and the Buyer's Agreement, or whether it awarded fees only under § 12-341.01(A) without considering the Buyer's Agreement. Accordingly, we remand the portion of the judgment awarding RM's attorney's fees so that the superior court may apply the fees provision in the Buyer's Agreement. We express no opinion about the outcome of such analysis.

## CONCLUSION

**¶29** We affirm the superior court's grant of summary judgment to RM but remand for further consideration the portion of the judgment awarding RM's attorney's fees and costs. Pursuant to the Buyer's Agreement, we grant RM its reasonable attorney's fees on appeal, contingent on compliance with Arizona Rule of Civil Appellate Procedure 21.



Ruth A. Willingham · Clerk of the Court
FILED: gsh